## In re CLEVELAND & SANDUSKY BREW-ING CO.

### No. 34222.

District Court, N. D. Ohio, E. D.
June 25, 1935.

204

Edwin Loeser and Eugene H. Freedheim (of Mooney, Hahn, Loeser & Keough), both of Cleveland, Ohio, for debtor.

Phillip H. Rabin and Joseph C. Breitenstein, both of Cleveland, Ohio, for the unions.

JONES, District Judge.

The Cleveland & Sandusky Brewing Company and its subsidiary, the Cleveland-Sandusky Company, filed separate petitions under section 77B of the Bankruptcy Act (11 USCA § 207), on February 18, 1935. An order was entered in the case approving the petitions as properly filed, permitting the debtors temporarily to continue in possession of their estates, and authorizing them to continue the operation of their business, providing for the usual injunction against removing, transferring, disposing, or interfering with any of the property owned by the debtors, or in possession of its officers or agents, and from the doing of any act to interfere with the management and possession by the debtors in respect of its property, and providing for exclusive jurisdiction of the court over the debtors and their property during the pendency of proceedings under section 77B. On the same day, all of the matters arising in these proceedings were referred generally to William B. Woods, as special master, for the purpose of conducting hearings and for the doing of all things in conformity with the Bankruptcy Act, and requiring the master to make report to this court of his findings and recommendations with reference to all matters.

On May 14, 1935, during the pendency of the proceedings before the special master, the debtor the Cleveland & Sandusky Brewing Company filed a motion for an order to show cause in contempt proceedings against the International Union of Brewery, Flour, Cereal and Soft Drink Workers of America, Local No. 17 of said International Union; John J. Reising, president of said Local No. 17, address 1022 Putnam street, Sandusky, Ohio; Fred Miller, secretary of said Local No. 17, address 1303 Putnam street, Sandusky, Ohio; Carl Sapienza, president of Local No. 17, address 3236 West Twenty-Fifth street, Cleveland, Ohio; John Bauer, secretary of Local No. 17, 3226 West Twenty-Fifth street, and Jack Heil, 7516 Elton avenue, both of Cleveland, Ohio, the latter a member of Local No. 17. This motion was based upon the charge that these persons and associations were interfering with the management and possession by the debtor of its property and assets, and with the discharge of the duties of the debtor and its officers, contrary to the order of February 18, 1935, and more particularly paragraph 9 thereof.

On the same day, the master issued an order to show cause on the persons named in the motion and the matter was set down for hearing for May 17, 1935, before the master. Answers were filed by the respective individual defendants against whom the order of the master had issued, denying the charges of interference or of any wrongful acts by them against the debtor or its property; denying that they or any one of them committed any contemptuous acts in respect of the order of this court of February 18, 1935. The answers further assert that any acts or conduct performed by them in respect of the debtor and its property were done and performed under favor of the so-called Norris-La Guardia Anti-Injunction Act passed by Congress March 23, 1932 (29 USCA §§ 101–115). They each seek a dismissal of the proceedings for contempt and denial of injunction.

The master gave a full opportunity for hearing and the taking of testimony, but upon the conclusion of the evidence offered by the debtor the respondents rested without offering any testimony. During the

course of the hearing, the respondents urged that they had had no actual notice of the order of this court of February 18, 1935, and that such order was not broad enough to cover the situation in respect of their conduct and acts. It is evident that the master took that view of the matter and no order of contempt was entered, whereupon the master modified the proceedings by recommending an order enjoining the respondents, and all persons acting in concert with them, from preventing, obstructing, or interfering with the removal from the Sandusky brewery of beer and equipment there located and belonging to the debtor.

While the order of this court of February 18, 1935, did not contemplate enjoining the type of interference with the debtor's property shown in the record, nevertheless the order was sufficient if proper notice was had by the respondents, and it has been the rule time out of mind that the filing of a bankruptcy petition is a caveat to all the world of the exercise of the jurisdiction by the bankruptcy court over the property of the debtor. But these defendants principally rely upon the lack of power of the bankruptcy court to proceed in a summary manner to enjoin them, in view of the inhibition of section 107, title 29, United States Code (29 USCA § 107), and other related sections, generally referred to as the Norris-La Guardia Anti-Injunction Act of March 23, 1932 (29 USCA §§ 101-115).

What the debtor, in reality, is seeking by the proceedings is the removal from the Sandusky plant of the beer and bottling machinery, to protect and preserve them against imminent destruction, for the benefit of the creditors. Such a proceeding need not be of precise formality, and it may be summary in character where no adverse claim to the property is asserted. The transcript of testimony and the report of the special master sufficiently show that destruction of the beer will be the result unless this court has the power and does grant the right of such removal and enjoin the respondents from interference.

Since April 22, 1935, there has been a jurisdictional labor dispute between the International Union of Brewery, Flour, Cereal & Soft Drink Workers of America, Local No. 17, and the Beer & Beverage Drivers' and Helpers' Union, No. 293. The employees in the plant at Sandusky belong to the former. On account of this jurisdictional dispute, the employees of the debtor in the Sandusky plant went on a strike on April 22d, last, under orders from their International officers. The debtor has no quarrel or labor dispute with its employees or labor unions at Sandusky, save as the voluntary walkout of April 22d may be considered such a dispute. The debtor is not undertaking to operate its plant or to replace men now on strike at the Sandusky plant. The only relief sought is the removal from the brewery at Sandusky of beer and bottling equipment.

The evidence before the master indicates that there are approximately 12,000 barrels of beer at the Sandusky plant which must be bottled at once to avoid tertiary fermentation and complete marketable loss; that this beer is valued at approximately $50,000, which will be the approximate loss to the debtor, or its creditors, unless the beer is immediately bottled. The evidence clearly shows that these respondents and others have prevented removal of this property from the plant at Sandusky; that large numbers of persons have formed a picket line about the brewery; and that there has been considerable violence and damage already done. According to the record, an officer of the International informed an officer of the debtor company that no beer can be taken from the plant, even though the debtor agreed that none of the beer would be distributed in Cuyahoga county, and that no trucks for the carriage of beer would be allowed on the premises. Thus, it will be seen that an impasse has been reached and that valuable property of the debtor will be destroyed unless this court has the power to grant relief.

From a consideration of the report and the record of the proceedings before the special master, it is clearly apparent that the relief sought by the debtor is not upon the basis of rights arising in respect of a labor dispute. The only relief sought is the preservation of the debtor's property pending reorganization under section 77B of the Bankruptcy Act. The respondents in their exceptions and briefs challenge the power of the bankruptcy court to preserve and protect the property of the debtor within its jurisdiction, because of the inhibitions of title 29, § 107, United States Code (29 USCA § 107), the so-called Norris-La Guardia Anti-Injunction Act. The sections of this act are of considerable length and familiarity of the par-

ties therewith makes unnecessary a recital of the provisions herein.

■ Save in respect of equitable rights arising under the Constitution, the Congress has the power to limit the jurisdiction of the court of equity in respect of the issuance of injunctions, as well as other matters. The limitations upon the power of the court to issue injunctions, where labor disputes are involved, are quite clear, and I think that the decision of Judge Tuttle in the Cinderella Theater Company, Inc., v. Sign Writers' Local Union No. 591 (D. C.) 6 F. Supp. 164, decided March 6, 1934, very graphically sets forth the necessary considerations and circumstances under which the restricted power of the court may be exercised. But in the view I take of the jurisdictional question, matters of procedure, service, and notice are unimportant.

Unless the bankruptcy court has the power to protect and preserve the property within its jurisdiction under the circumstances here, it may be conceded that the proceedings were not in strict conformity in respect of procedure under title 29 USCA, § 107. But if the bankruptcy court has such power, and does not exercise it, there is ample evidence in the record to support a finding that the property of the debtor within the court's jurisdiction will be destroyed, and that the injury will be irreparable.

■ Summary power exists in the bankruptcy court to deal with property under its jurisdiction and where no adverse claims to the property are present and asserted.

■ By section 77B(a), it is provided: "If the petition or answer is so approved, an order of adjudication in bankruptcy shall not be entered and the court in which such order approving the petition or answer is entered shall, during the pendency of the proceedings under this section, have exclusive jurisdiction of the debtor and its property wherever located for the purposes of this section, and shall have and may exercise all the powers, not inconsistent with this section, which a Federal court would have had it appointed a receiver in equity of the property of the debtor by reason of its inability to pay its debts as they mature."

Subsection (c) provides: "In case a trustee is not appointed, the debtor shall continue in the possession of its property,

and, if authorized by the judge, shall operate the business thereof during such period, fixed or indefinite, as the judge may from time to time prescribe, and shall have all the title to and shall exercise, consistently with the provisions of this section, all the powers of a trustee appointed pursuant to this section, subject at all times to the control of the judge, and to such limitations, restrictions, terms, and conditions as the judge may from time to time impose and prescribe."

Subsection (k) provides: "All other provisions of this Act [title], except such as are inconsistent with the provisions of this section [77–B], shall apply to proceedings instituted under this section, whether or not an order to liquidate the estate has been entered."

Subsection (o) provides: "In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition or answer was approved." 11 USCA § 207 (a, c, k, o).

Thus, it will be seen from these sections of the Bankruptcy Act that the bankruptcy court has been given exclusive jurisdiction over the debtor's property, and the debtor is given all the powers of a trustee in bankruptcy during the pendency of the reorganization proceedings. Certainly, Congress never intended to deprive the bankruptcy court of power to enjoin interference with property within its jurisdiction, for the purpose of carrying out the provisions of section 77B of the Bankruptcy Act and the orders of the court made in pursuance thereof. It is not to be supposed that Congress intended that the bankruptcy court should be impotent to preserve and administer property within its jurisdiction, in conformity to the express provisions of the act.

That Congress had the effect of the bankruptcy amendment in mind, as it might affect the rights of labor unions, is evident from an examination of subsections (l) and (m), § 77B of the act, 11 USCA §§ 207 (l, m), which are as follows:

"No judge, debtor, or trustee acting under this section shall deny or in any way question the right of employees on the

property under the jurisdiction of the judge, to join the labor organization of their choice, and it shall be unlawful for any judge, debtor, or trustee to interfere in any way with the organizations of employees, or to use funds under such jurisdiction, in maintaining so-called company unions, or to coerce employees in an effort to induce them to join or remain members of such company unions.

"No judge, debtor, or trustee acting under this section shall require any person seeking employment on the property under the jurisdiction of the judge to sign any contract or agreement promising to join or to refuse to join a labor organization; and if such contract has been enforced on the property prior to the property coming under the jurisdiction of said judge, then the judge, debtor, or trustee, as soon as the matter is called to his attention, shall notify the employees by an appropriate order that said contract has been discarded and is no longer binding on them in any way."

No mention is there made that the bankruptcy court should have no power to preserve or protect property under its jurisdiction from destruction where a difference or dispute between labor organizations existed. The declared policy of the labor act (29 USCA § 102), the specific acts enumerated as not subject to injunctions (section 104), and the limitation upon the power of the court to enjoin (section 107), do not apply, as it seems to me, to the circumstances involved in this bankruptcy case. In view of these provisions, and the earlier ones referred to, it is reasonable to conclude that if Congress intended to curtail the bankruptcy power where the threatened destruction of property within its jurisdiction was related to a labor dispute, it would have said so, because the enactment of section 77B of the Bankruptcy Act came more than two years after the enactment of the labor disputes act.

The primary purpose of section 77B is to permit financially distressed corporate debtors to scale down or readjust their capital structures, but all classes of creditors are given the right to vote on whether a proposed plan shall be accepted or rejected; and this statutory right to participate in the disposition of the debtor's property will have been a vain one if the property of the debtor may be destroyed in a quarrel between opposing workers, to which the debtor is not a party.

Treating the proceedings as one for the preservation of the debtor's property from destruction pending the reorganization proceedings, the bankruptcy court has power summarily to order the removal of the property and enjoin the respondents, and all others, from interference. There is abundant evidence in the record that the property cannot be removed, and will be destroyed, unless this court exercises its power to preserve and protect it. It will be understood that the order of the bankruptcy court goes no farther than to permit the debtor to remove and transfer to its Cleveland plant the beer in vats and containers, and the bottling equipment, for the purpose only of bottling the beer and thus to preserve and protect the assets of the debtor within the jurisdiction of the bankruptcy court against imminent destruction. The respondents and all others are enjoined from molesting or in any manner interfering with the debtor or with the marshal in carrying out this order.

There is an implication in the exceptions and briefs of the respondents that the debtor has invoked the jurisdiction of the bankruptcy court as an escape from this labor controversy, rather than for the purpose of effecting a reorganization under the provisions of the act. There is no evidence before me to support such inference, but color is given to such suggestion and implication by the fact that no plan of reorganization has been proposed, although the debtor's petition was filed and approved on February 18, 1935. It is not the purpose of section 77B of the Bankruptcy Act to continue the debtor in possession indefinitely. The purpose of the act is to effect reorganization promptly. The law contemplates the existence of a tentative plan at the time of invoking the aid of the bankruptcy court, and a reasonable time only for proposal and acceptance of the plan is allowed. The bankruptcy court may not be used as a temporary refuge from the consequences of labor trouble. The debtor may respond that the labor troubles have interfered materially with the reorganization proceedings and the submission of a plan, but proposals, contracts, and obligations may be undertaken conditioned upon delays occasioned by strikes and other contingencies.

The exceptions of the respondents will be overruled, and the findings and report of the master adopted and confirmed, to all of which the respondents may enter exceptions.