In the Matter of **HARBOR TANK STOR-AGE CO., Inc.**

**Murray Oil Products Co., Inc., Appellant.**

**No. 16380.**

United States Court of Appeals
Third Circuit.

Argued June 6, 1967.

Decided Sept. 20, 1967.

Copal Mintz, New York City, for appellant.

Laurence B. Orloff, Greene & Orloff, Newark, N. J., for appellee H. Lawrence Kaufman and others.

Robert W. Spencer, Stryker, Tams & Dill, Newark, N. J., for appellee Warehouse Receipt Creditors' Committee.

Before STALEY, Chief Judge, HASTIE, Circuit Judge, and SHERIDAN, District Judge.

## OPINION OF THE COURT

STALEY, Chief Judge.

This is an appeal by Murray Oil Products Co., Inc. from an order of the district court for the district of New Jersey denying appellant's petition to file, nunc pro tunc, a claim as a general creditor in reorganization proceedings of the Harbor Tank Storage Co., Inc. under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–676 (1964). At the time appellant filed its petition, the district court had already confirmed a plan of reorganization of the debtor, and had previously entered an order barring further filing of claims in the proceeding. Appellant sought to avoid the thrust of the bar order on the basis that he was never given notice of the bar order or any other notice of the steps in the reorganization proceeding, although the trustee had actual knowledge of appellant's claim.

The district court considered the petition as addressed to its discretion. On the basis of various affidavits and arguments of counsel, as well as the plan of reorganization, the district court denied the petition because it found that appellant would only be entitled to file a claim as a "Warehouse Receipt Creditor" and appellant had refused the offer of a committee of such claimants which would have allowed Murray Oil to participate on a parity with them. The district court also found the appellant guilty of laches. We hold that under the circumstances, appellant had an absolute right to file a claim nunc pro tunc in the proceeding, and we remand to the district court for further proceedings in order to classify Murray Oil's claim as it would have been classified had it been timely filed.

The instant reorganization proceedings began on December 9, 1963 when the debtor filed a petition under Chapter X. The debtor, Harbor Tank, had engaged in the business of operating oil storage facilities. Harbor Tank's principal place of business was in West New York, New Jersey, and it also operated a field tank farm in Bayonne, New Jersey. This latter facility was involved in the gigantic "Salad Oil" swindle which precipitated the debtor's financial difficulties. The debtor's petition for relief under Chapter X indicated that although Harbor Tank was otherwise solvent, relief under the corporate reorganization provisions was necessary because "Claims in an unknown amount have been made against debtor company for the delivery of certain stored oils, for which certain warehouse receipts have been allegedly issued in connection with the operation of Allied Oil * * *" These claims were estimated to be in the neighborhood of $40,000,000, only a fraction of which was covered by actual oil.

Soon after the petition for reorganization was filed, the district court appointed a trustee. Notice of the trustee's appointment and of hearings to consider objections to his appointment and to fix a date for submissions of reorganization plans was mailed to creditors on January 17, 1964, and was published in the Newark Evening News on January 24, 1964, the eve of the hearing. No notice was mailed to Murray Oil Company.

Over the course of the year, various proofs of claim were filed with the trustee. On January 12, 1965, the district court entered an order limiting the time to file proofs of claim of creditors and of interests of stockholders to March 22, 1965, and directing the trustee to send a copy of the order to all interested parties and to publish a copy of the order in the Newark Evening News. No copy of this order was mailed to Murray Oil Company.

In July, 1965, the trustee submitted a plan of reorganization and on July 12, 1965, the district court entered an order approving the plan and ordering hearings to consider objections and amendments. The trustee was ordered to mail copies of the plan, a "Summary of Plan" and notice of the hearing to all creditors and parties in interest. No copy of this plan or notice of the hearing was sent to Murray Oil Company.

Extensive hearings on this plan of reorganization were held throughout the

remainder of 1965 and into 1966. Finally on March 23, 1966, the district court entered an order, finding that the plan of reorganization as amended and so "served on all creditors and interested parties" was fair and equitable, and confirming the amended plan.

Under the reorganization plan, as confirmed by the district court, there are five classes of creditors: (1) wage claimants; (2) claims of the United States of America; (3) claims of the State of New Jersey and local municipalities; (4) Warehouse Receipt Creditors; and (5) General Creditors. The plan defines general creditors to include " * * * the holders of all unsecured claims against the Debtor which are not entitled to priority, other than Warehouse Receipt Creditors;" and " 'Warehouse Receipt Creditors' shall consist of those creditors who are such by reason of being the holders of or possessing interests in unsatisfied valid warehouse receipts issued by the Debtor for vegetable oil and/or lard and/or other animal fats and/or fish oil." The order confirming the plan contains a listing and valuation of the commodities represented by warehouse receipts and included in the class of "Warehouse Receipt Creditors:" Soybean oil, cotton oil, lard, tallow and crude menhaden oil (fish oil).

The plan provides that the claims of all creditors in classes 1, 2, 3 and 5 are to be paid in full, while the Warehouse Receipt Creditors will receive "pro rata participation in $600,000 worth of new stock to be issued by the new company * * * in addition to sharing any recovery on certain choses in action specifically reserved for them in the Amended Plan and the net proceeds of the sale of commodities in the tanks subleased to the Debtor at Bayonne, New Jersey * * * " We are informed that the amount of $73,000,000 of warehouse receipt claims has been filed and is included in this 4th class of creditors. 100% of the Warehouse Receipt Creditors approved the plan, as was required by its terms before confirmation.

Murray Oil Company had been doing business with the debtor, Harbor Tank, for several decades, storing oils at the debtor's West New York facility only. The business between the parties was conducted under the supervision of a marine bulk oil and chemical surveyor who would certify the quantity of oil stored by Murray Oil to both parties. Harbor Tank issued a "Report of Oils & Merchandise Received for Storage" to Murray Oil upon storage, and honored Murray Oil's written delivery orders as received.

At the time of Harbor Tank's petition for reorganization, Murray Oil had a substantial quantity of tung oil stored with the debtor at West New York. However, a large deficiency of tung oil was discovered equal to about ¼th of the amount delivered. Murray Oil knew of the initiation of the reorganization proceedings virtually from the outset, and the trustee did honor Murray Oil's delivery orders for tung oil until there was no more oil in the tank. The value of the undelivered tung oil is $21,705.31.

During the first few months of the reorganization proceedings, the trustee, the attorneys for the debtor and H. L. Kaufman, president of the debtor, cooperated with Murray Oil in seeking compensation for the value of the missing oil from the insurance company which had insured Harbor Tank against liabilities arising out of its West New York facility. Subsequently, Murray Oil brought suit directly against the insurer in the Supreme Court of New York under the provision of the policy authorizing such suits where the insured has become bankrupt or insolvent. At the time this appeal was argued, the suit was still pending.

Up to and including the time the plan of reorganization was confirmed, there were a number of conversations and exchanges of letters between H. L. Kaufman and the debtor's attorneys and principals of Murray Oil regarding the suit against the insurer. In his affidavit, Mr. Kaufman states that he recalls that on a number of occasions he told the

president of Murray Oil that "we were working on a Plan of Reorganization and hoped to reorganize." On March 2, 1966, twenty days before the entry of the order confirming the "Amended Plan," the attorney for Murray Oil wrote letters to Mr. Kaufman and to the debtor's attorneys regarding assistance in the then-anticipated trial of the suit against the insurer. Included in the letter to the debtor's attorneys was this inquiry about the reorganization: "Has there been any adjudication? What is the present status of the Proceedings in the Federal Court?" The debtor's attorney promptly forwarded this letter to the trustee, but the trustee did not bring the matter of Murray Oil's status as an unscheduled creditor to the attention of the district court, nor to Murray Oil or any other interested party.

After confirmation of the "Amended Plan," Murray Oil learned of the order in the public press. In his affidavit, the attorney for Murray Oil states that he called Mr. Kaufman and asked him how it happened that Murray Oil had received no notice and that Mr. Kaufman replied that it was not listed as a creditor because its claim was covered by insurance. Mr. Kaufman's affidavit does not deny this. Upon further checking, Murray Oil's attorney acquired copies of the various orders entered in the reorganization proceedings, including the bar order, and he immediately initiated discussions with Mr. Kaufman and his attorney to secure an agreement that Murray Oil's loss would be made good in case the litigation against the insurer was unsuccessful. Failing to get an agreement, the district court was informally notified of Murray Oil's exclusion from the Proceedings, and asked that Murray Oil be permitted to file an application for relief, without prejudice for delay, after the trial of the action against the insurer. Failing to secure agreement, Murray Oil filed a petition requesting leave to file its claim as a general creditor, nunc pro tunc, in the reorganization proceedings,

subject to the outcome of the action against the insurer.

As noted supra, the district court considered the Murray Oil petition as one addressed to its discretion, and it held that Murray Oil was not entitled to come in under the provisions of the plan as a general creditor, but would, at best, be properly classified as a "Warehouse Receipt Creditor;" since appellant had refused the Warehouse Receipt Holders Committee offer of pro rata participation, the district court denied any relief.

■■ We do not agree that Murray Oil's participation as a creditor was dependent on the district court's discretion. We hold that under the circumstances, Murray Oil had an absolute right to file and prove its claim in the proceeding, despite the fact that the bar date had passed and the plan was confirmed.[1] The rejection of Murray Oil's petition in the face of the inexplicable failure of the trustee to give Murray Oil any of the various notices required by Chapter X— despite the trustee's actual knowledge of Murray Oil's unsatisfied, meritorious claim—constitutes a denial of due process.

The appellees contend that the provisions of Chapter X require the result reached below: the entry of the order confirming the reorganization plan cut off Murray Oil's right to file a claim. It is true that rigid adherence to the terms of § 224, 11 U.S.C. § 624 (1964) would seem to compel this result:

"Section 224. Effect of Confirmation. Upon confirmation of a plan—(1) the plan and its provisions shall be binding upon * * * all creditors * * * whether or not such creditors * * * are affected by the plan or have accepted it or have filed proofs of their claims or interests and whether or not their claims or interests have been scheduled or allowed or are allowable". 11 U.S.C. § 624(1) (1964).

And appellees have cited cases containing dicta to the effect that a confirmation

---

1. There is no substantial evidence to support the district court's finding that Murray Oil was guilty of laches.

order bars nonparticipating creditors whether or not they received notice. E. g., Evans v. Dearborn Mach. Movers Co., 200 F.2d 125 (C.A.6, 1953); North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp., 143 F.2d 938 (C.A. 2, 1944); Piedmont Ice & Coal Co. v. American Serv. Co., 130 F.2d 78 (C.A.4, 1942); Mohonk Realty Corp. v. Wise Shoe Stores, Inc., 111 F.2d 287 (C.A.2), cert. denied 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418 (1940); In re Davis Mfg., Inc., 95 F.Supp. 200 (D.Kan.1951).

Appellees also urge that since Murray Oil had actual knowledge that reorganization proceedings had been initiated, appellant should have independently checked on the progress of the proceedings, and should have filed his claim without waiting for notice to do so. Finally, appellees point to the fact that though notice was not mailed to Murray Oil, the trustee did comply with the statute and the various orders of the district court insofar as he published notices in the Newark newspapers.

■■■■ The essential fact remains that Murray Oil was not mailed the various notices required to be given to creditors by Chapter X. The notice provisions of the Act were inserted to prevent this very type of situation from occurring. As noted in 6 Collier, Bankruptcy ¶¶ 0.01–0.11, an essential objective of Congress in replacing 77B with Chapter X was to encourage active, informed creditor participation in the reorganization proceedings. The reorganization process is dependent on the proper notification to creditors and other interested parties of all important steps in the proceeding so that they may take such steps as necessary to safeguard their interests. Although notice by publication may be deemed to satisfy the requirements of the Act in some situations, certainly such notice is insufficient where, as here, the trustee knows both the existence and address of a creditor. And the fact that a creditor knows of the initiation of reorganization proceedings does not of itself place a burden on the creditor to file an appearance or claim in the proceeding before receiving notice to do so: a creditor has every right to assume that he will be sent all the notices to which he is entitled under the Act.

We are compelled to this conclusion by the Supreme Court's opinion in City of New York v. New York, N. H. & H. R. R., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In this case, the reorganized railroad company sought an order declaring certain property free and clear of assessment liens running to the City of New York, and further relief restraining the City from attempting to enforce said liens. The railroad based its action on the fact that the City had timely, actual notice of the reorganization proceedings, but it had not filed claims for the assessments in the proceedings; thus the City's inaction in the face of a bar order precluded the City from participating in the reorganization and rendered the liens unenforceable against the reorganized debtor. The City contended, inter alia, that it did not receive a notice to file its claims by mail, and the only notice directed to it and certain other creditors was by newspaper publication. The district court granted the requested relief against the City, sub nom. In re New York, N. H. & H. R. R., 105 F.Supp. 413 (D.Conn.1951), and the Court of Appeals for the Second Circuit affirmed over the strong dissenting opinion of Circuit Judge Frank. 197 F.2d 428 (C.A.2, 1952). Significantly, Judge Frank cited a number of the cases relied upon here by the appellees, but he noted that they were distinguishable on their facts, and that they were decided before Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The Supreme Court reversed, along the lines suggested by Judge Frank, holding that the publication of notice in the newspapers did not comply with the statutory requirement that creditors be given "reasonable notice." Equally important for our purposes is the following language:

"Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the

railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred. When the judge ordered notice by mail to be given the appearing creditors, New York City acted reasonably in waiting to receive the same treatment.

The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights. New York City has not been accorded that kind of notice." 344 U.S. at 297, 73 S.Ct. at 301.

It is true that *City of New York* was decided under § 77, Reorganization of Railroads Engaged in Interstate Commerce, while we are dealing here with the provisions of Chapter X. Nevertheless, the essential issue—what is the effect of the failure to give notice to a known creditor—is identical to both cases, and there is nothing in the language or structure of Chapter X to suggest that a different result should be reached.

The district court found that Murray Oil would be classified properly as a "Warehouse Receipt Creditor" in Class 4 of the plan of reorganization. This conclusion was made without an evidentiary hearing which might disclose the factual distinctions between the claims included in that class and appellant's claim. Sparse as the record is, it does disclose the fact that the persons included in the "Warehouse Receipt Creditors" class are exclusively those holding warehouse receipts issued in the course of the Allied Oil swindle at Bayonne, while the "General Creditor" class includes all the other claimants, from both West New York and Bayonne, except for the claims of certain wage earners and government bodies. The limited evidence

before us suggests that both H. L. Kaufman and the trustee thought Murray Oil's claim to be different from the Bayonne warehouse receipt creditors. Indeed, the fact that Murray Oil was not scheduled by the trustee suggests this, especially since the plan of reorganization drafted by the trustee called for 100% approval by the "Warehouse Receipt Creditors" before it could be confirmed.

However, we cannot make the determination of Murray Oil's classification on this record. It should properly be made by the district court, after a hearing, under the principles set forth in Section 197 of the Act, 11 U.S.C. § 597 (1964).

The decision of the district court will be reversed and the case will be remanded for proceedings in accordance with this opinion.