In the Matter of **INTACO PUERTO RICO, INC.,** Debtor.

Appeal of **GABRIEL ALVAREZ & ASSOCIATES.**

**No. 73-1277.**

United States Court of Appeals, First Circuit.

Argued Feb. 7, 1974.

Decided March 29, 1974.

Edward S. Kanbar, Santurce, P. R., with whom Jose R. Fournier, Bayamon, P. R., was on brief, for appellant.

Jorge Bermudez Torregrosa, San Juan, P. R., for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

This case presents difficult questions concerning the relative rights and responsibilities of the various participants in a Chapter X reorganization proceeding. Because of the rather unusual history of this matter, the facts must be stated in some detail.

On January 18, 1971, Intaco Puerto Rico, Inc. ("the Debtor") filed a petition for reorganization in the district court pursuant to Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. (1970). The court approved the petition the next day. As part of its order of approval, the court, acting under the authority of 11 U.S.C. § 516(4), enjoined creditors from commencing suits against the Debtor, or its Trustee. The intended purpose of this injunction was, of course, to restrict all outstanding claims by creditors to the reorganization proceeding.

In April 1971 the Trustee, acting to preserve the assets of the Debtor, instituted a civil suit against Gabriel Alvarez & Associates ("the Creditor") for recovery of certain monies allegedly due. Shortly thereafter, on May 10, 1971, the Creditor, in apparent violation of the

bankruptcy court's prior injunction,[1] counterclaimed against the Trustee for damages based on the Debtor's alleged breach of contract. Subsequently, under a threat of contempt of court for violating the injunction, the Creditor was compelled on June 30, 1971, to withdraw his counterclaim. In accepting the withdrawal, the district court reserved the question whether such "withdrawal of the claim for damages was with or without prejudice."[2]

■ In the meantime, the reorganization proceedings were progressing rapidly, and on October 20, 1971, a Plan of Reorganization was confirmed by the bankruptcy court. However, despite the Trustee's obvious awareness, at least since May 10, 1971, of the Creditor's claim against the Debtor,[3] no formal notice of any kind concerning the pendency of those proceedings, the developments therein, or the time and manner in which to file claims, was ever given to the Creditor.[4] For his part, though the Creditor was presumably cognizant of the pending reorganization by virtue of the required withdrawal of his counterclaim, he never directly intervened in that matter nor made a formal offer of proof of his claim.

Nearly a year after confirmation of the Plan of Reorganization, the Creditor moved in district court, in the Trustee's still unresolved civil suit, for leave to refile his counterclaim. This motion was denied. The Creditor then, for the first time, went into bankruptcy court and offered the substance of his rejected counterclaim, with certain amendments, as a Proof of Claim against the Debtor. Without any analysis of the merits, the court dismissed the Proof of Claim on the grounds that (1) as a counterclaim, its prior withdrawal under pain of contempt was intended by the district court to be taken with prejudice and consequently "it follow[ed] that a proof of claim which is simply the same counterclaim in disguise cannot be entertained,"[5] and that (2) in any case, the Proof of Claim was untimely. From this determination the Creditor appeals.

■ Initially, we must decide whether the bankruptcy court was correct in considering the counterclaim withdrawal as having been made with prejudice. This will depend, in large part, upon

1. There is no evidence in the record to suggest that prior to the filing of his counterclaim, the Creditor was in any way aware of the earlier bankruptcy court injunction.

2. Since a dismissal with prejudice was not explicitly ordered, it is unclear whether the district court actually intended to punish the Creditor for contempt.

3. The Trustee's apparent argument that, since the Creditor had withdrawn his counterclaim, there was no longer any reason to believe that any such claims would be made against the Debtor, simply will not wash. Clearly, the only reason that the counterclaim was withdrawn was because it had been brought, in effect, in the wrong forum. Certainly, the Creditor's compelled decision to withdraw his claim could not have been reasonably interpreted by the Trustee as an abandonment of his stated position that the Debtor owed him money.

4. Although the record is somewhat hazy on this point, it appears that notice of various aspects of the proceedings, including the confirmation of the plan and the right to file claims, had been actually mailed by the Trustee to various other known creditors of the Debtor. Additionally, such notice was given by publication in a local newspaper.

5. By deciding that the withdrawal was with prejudice, the bankruptcy court concluded that the district court had actually imposed a contempt sanction, though the latter court had itself previously reserved this matter, see note 2 supra. In so doing, the bankruptcy court relied primarily on the fact that the district court had subsequently rejected the Creditor's motion to refile his counterclaim, deeming such a rejection as "tantamount to a determination that the withdrawal of the counterclaim had been with prejudice." However, the district court order denying the motion does not specifically support this conclusion. In relevant part, the order merely stated:

"Having examined the above mentioned documents, and in view of the fact that in a Pre-Trial Memorandum filed and entered on June 30, [1971], the moving defendant [the Creditor] withdrew a previous counterclaim filed in this case, this Court hereby denies defendant's motion. . . ."

whether, under these facts, the district court could have properly imposed such a contempt sanction for the Creditor's violation of the § 516(4) injunction.[6] We have no doubt that under appropriate circumstances, a § 516(4) injunction against existing creditors can legitimately be enforced by contempt proceedings. *See, e. g.,* In re 4145 Broadway Hotel Co., 131 F.2d 120 (7th Cir. 1942). It is also possible that, in a proper situation, the price a party could be forced to pay in order to purge himself of such contempt may well be a dismissal of his claim with prejudice. However, dismissal of a claim with prejudice, with all its attendant substantive consequences, is to be regarded as the proper remedy for violation of a § 516(4) injunction only in the most flagrant of cases. *Cf. id.*; Converse v. Highway Const. Co., 107 F. 2d 127 (6th Cir. 1939). Normally, dismissal of the claim with leave to file in the bankruptcy proceeding will suffice to accomplish the policy objectives underlying the injunction.

▆▆▆ The record before us indicates that the Creditor was completely unaware of the bankruptcy's court injunction, since no notice of its issuance had been affirmatively communicated to him. And, although the older cases suggest that lack of notice of such an injunction is, *by itself*, insufficient to form a defense to contempt proceedings, *e. g.,* Converse v. Highway Const. Co., *supra;* In re Cleveland & Sandusky Brewing Co., 11 F.Supp. 198 (D.Ohio 1935), it is at least arguable that the many recent Supreme Court pronouncements in the area of procedural due process would compel the conclusion that the older cases are of questionable continued validity. However, that is a matter which we need not presently decide. For, in any case, we believe that, at least where no

notice has been given so that the breach of the injunction may not be deemed to have been willful, something more than just the mere filing and prompt withdrawal of a prohibited claim must be shown to justify the contempt-based sanction of dismissal of the claim with prejudice. *Cf.* In re Burns Bros., 50 F. Supp. 53 (S.D.N.Y.1943). The primary function of a § 516(4) injunction is to prevent undue interference either with the Debtor's property or the bankruptcy court's exclusive jurisdiction over the matter. 6 Collier on Bankruptcy § 3.30 (Moore & Oglebay ed. 1972). In the instant case, the Creditor's filing and subsequent withdrawal of his counterclaim, had, in fact, very little, if any, adverse impact upon these important policy considerations. If, in a future case, such adverse interference were to occur, we would then of course have a very different question. However, under the present facts, we believe that the district court could not have properly required the Creditor's withdrawal of his counterclaim, under threat of contempt, to have been taken "with prejudice." Consequently, in determining otherwise and in relying on that ground as a basis for dismissing the Proof of Claim, the bankruptcy court committed error.

▆▆ We next turn to the court's further holding that the Creditor's claim was untimely. The Creditor urges that since the bankruptcy court never actually complied with the requirements of 11 U.S.C. § 596 by setting a final date for the entry of claims,[7] his offer of proof was still timely, despite the ultimate confirmation of the plan. While it is apparently true that the court, for reasons unknown, neglected to specifically comply with § 596 in this respect, we would nonetheless hesitate, on that ground alone, to permit the filing of

---

6. Of course, even if the district court *could* have appropriately imposed a withdrawal with prejudice sanction, we would still be faced with the question of whether, as the bankruptcy court found, it *did*, in fact, do so in this matter. *See* note 5, *supra.*

7. 11 U.S.C. § 596 provides, in relevant part, that

"After the approval of the petition the judge shall prescribe the manner in which and fix the time within which the proofs of claim of creditors . . . may be filed and allowed."

claims *after* confirmation of the plan,[8] had the Creditor been given full and adequate notice respecting the pendency and outcome of the bankruptcy proceedings and the manner for filing of claims therein.[9] Consequently, we must examine the nature of the notice actually transmitted to the Creditor, and the extent of the Trustee's duty to communicate such notice to him.

In this regard, we note that while there can be no doubt that the Trustee was fully cognizant of the Creditor's claim, note 3, *supra*, actual notice of the various Chapter X proceedings had not been mailed to him as it had to other identifiable creditors. The only notice which can be said to have been, in part, for the benefit of the Creditor, was the general notice by publication offered in local newspapers. *See* note 4, *supra*. However, despite the Creditor's lack of receipt of formal notice, he apparently did have actual knowledge at least of the general existence and pendency of the Chapter X proceeding, though presumably not of each significant development therein.

In In re Harbor Tank Storage Co., 385 F.2d 111 (3d Cir. 1967), the petitioner had filed a proof of claim in a Chapter X proceeding some time after the court had confirmed a plan of reorganization. Although the petitioner had actual knowledge that reorganization proceedings had been instituted, he never attempted to intervene in that matter prior to confirmation. However, the trustee in bankruptcy, while completely aware of the petitioner's claim, had nev-

er directly given him formal notice of the various reorganization developments, although general notice by publication had been made. The appeals court, in reversing a dismissal of the claim, ruled that the petitioner had the right to file and prove its claim in bankruptcy court. Relying on the fact that adequate notice had not been given, the court rejected the contention that pursuant to 11 U.S.C § 624(1), "the entry of the order confirming the reorganization plan cut off [petitioner's] right to file a claim." 385 F.2d at 114. Where the creditor was known or identifiable, the court ruled, proper notice would have to be mailed to him, and notice by publication was, with respect to such creditors, entirely insufficient. *Id.* at 115. In addition, the court dismissed the trustee's further argument that since the petitioner had actual knowledge of the pending reorganization proceedings, he had the affirmative obligation to file his claim without waiting for notice to do so:

> "[T]he fact that a creditor knows of the initiation of reorganization proceedings does not of itself place a burden on the creditor to file an appearance or claim in the proceeding before receiving notice to do so: *a creditor has every right to assume that he will be sent all the notices to which he is entitled under the Act.*" *Id.* (Emphasis supplied).

In reaching this result, the court placed heavy emphasis on the Supreme Court's opinion in New York v. New York, N. H. & H. Rr., 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In that

---

**8.** After confirmation of the plan, its provisions "shall be binding . . . upon all creditors . . ., whether or not such creditors . . . are affected by the plan or have accepted it or have filed proof of their claims or interests and whether or not their claims or interests have been scheduled or allowed or are allowable." 11 U.S.C. § 624(1). However, in our view, the binding nature of the confirmation does not attach if adequate notice had not been given to a creditor seeking to establish his claim. *See* In re Harbor Tank Storage Co., 385 F. 2d 111 (3d Cir. 1967). The nature and adequacy of the required notice will generally

depend upon whether or not the creditor is known or specifically identifiable. *See* text *infra.*

**9.** Chapter X of the Bankruptcy Act requires that notice be given to creditors of virtually every significant development in the reorganization proceeding, including, *inter alia*, notice of hearings to consider the reorganization plan, 11 U.S.C. § 571, notice of the outcome of such hearings, 11 U.S.C. § 575, notice of a hearing on the confirmation of the plan, 11 U.S.C. § 579, and notice of the right and manner of the filing of claims, 11 U.S.C. § 596.

case, the respondent railroad, after undergoing a reorganization pursuant to § 77 of the Bankruptcy Act, sought to bar enforcement of certain city liens which had not been claimed in the reorganization proceeding. Though the city had actual knowledge that reorganization of the railroad was pending, it never attempted to file its claims. Conversely, although the railroad was aware of these claims, it neglected to mail any notice to the city, though various notices had been mailed to other known creditors. Instead, the railroad sought to rely on notice by publication. After holding that such notice was insufficient where the creditor was known, the Court ruled that notwithstanding the entry of a final reorganization decree, the city's claimed liens could still be enforced. This would be the case, the Court noted, despite the "city's knowledge that reorganization of the railroad was taking place," since "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given before their claims are forever barred." 344 U.S. at 297, 73 S.Ct. at 301.

In our view, the decision in New York v. New York, N. H. & H. Rr. requires us to conclude, as did the Third Circuit under essentially equivalent circumstances, *In re Harbor Tank Storage Co., supra,* that the Creditor's claim in the instant action was still timely. Indeed, the *New York* case would be directly on point with ours were it not for the fact that the reorganization there was a proceeding under § 77 and not Chapter X. However, "the essential issue—what is the effect of the failure to give notice to a known creditor—is identical to both

cases, and there is nothing in the language or structure of Chapter X to suggest that a different result should be reached." In re Harbor Tank Storage Co., *supra*, 385 F.2d at 116.

We therefore hold that the failure of the Trustee, knowing of the Creditor's claim, to mail the various notices required by Chapter X, precludes a finding that the Creditor is barred by confirmation of the reorganization plan from presenting his claim to the bankruptcy court.[10] Mere notice by publication, though, of necessity, sufficient where a creditor is either unknown or of uncertain identity, New York v. New York, N. H. & H. Rr., *supra;* Standard Oil Co. v. New Jersey, 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951), cannot be considered adequate under the circumstances here presented. The importance of active creditor participation in reorganization proceedings, which Chapter X explicitly encourages, *see* note 9 *supra*, coupled with the practical dangers to substantive creditor rights posed by the lack of such participation, will admit of no other conclusion. Moreover, the fact that the creditor may, as here, be generally aware of the pending reorganization, does not of itself impose upon him an affirmative burden to intervene in that matter and present his claim. The trustee can not avoid his statutory responsibility under Chapter X, to formally provide the required notice, simply because of a creditor's possible familiarity with general aspects of the proceedings. As the Supreme Court has stated, the creditor has a right to assume that proper and adequate notice will be provided before his claims are forever barred.[11]

---

10. Those cases suggesting that failure to give proper notice will not affect the validity of a confirmation order, *e.g.*, Evans v. Dearborn Movers Co., 200 F.2d 125 (6th Cir. 1953); North American Car Corp. v. Peerless Weighing & Vending Mach. Corp., 143 F.2d 938 (2d Cir. 1944); Mohonk Realty Corp. v. Wise Shoe Stores, Inc., 111 F.2d 287 (2d Cir.), cert. denied, 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418 (1940), were all decided prior to New York v. New York, N. H.

& H. Rr., and consequently cannot be considered good authority for this proposition.

11. We might arguably have reached a different result had the Creditor possessed actual knowledge, not merely of the general pendency of the Chapter X reorganization, but of each particular development therein to which formal notice would be required. *Cf.* In re DCA Development Corp., 489 F.2d 43 (1st Cir. 1973). In such a situation, it is

Our decision in this matter is a limited one. In reversing the judgment below, we do not require the bankruptcy court to accept the Creditor's claim, but merely to consider it on the merits. We naturally recognize that if the claim is eventually approved, some problems would be created with respect to the administration of the present reorganization plan. However, such problems as may develop, if any, are certainly not beyond the ken of the court on remand.

Reversed and remanded for proceedings not inconsistent with this opinion.

not entirely clear that *New York* or *Harbor Tank* would necessarily apply. We need not decide that issue, however, because the Creditor in the instant case possessed only the most general knowledge respecting the institution of the reorganization proceedings.