**In re ARNOLD PRINT WORKS, INC., Debtor.**

**Bankruptcy No. 4–81–0532–G.**

United States Bankruptcy Court, D. Massachusetts.

March 13, 1985.

Franklin H. Caplan, Kamberg, Berman, Gold & West, P.C., Springfield, Mass., for National Utility Service, Inc.

Paul Salvage, Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., Springfield, Mass., for Creditors' Committee.

Philip J. Hendel, Hendel, Collins & Stocks, P.C., Springfield, Mass., for Arnold Print Works, Inc.

## MEMORANDUM AND ORDER

### RE OBJECTION TO LATE FILED CLAIM

PAUL W. GLENNON, Bankruptcy Judge.

This matter comes before the Court on the objection of the Debtor to a motion of National Utility Service, Incorporated to compel payment of an Administrative claim.

### FACTS

On September 27, 1979, National Utility Service, Incorporated ("National") and Arnold Print Works, Inc. ("the Debtor") entered into a written agreement wherein National was engaged to conduct an analysis and profile of the energy needs and usage of the Debtor. National was to review the Debtor's past energy billings, ensure that all billings were accurate, identify any overcharges, and make recommendations regarding the overall reduction of the Debtor's energy expenses. National's compensation under this agreement was tied to the amount of savings realized by the Debtor as a result of any recommendations submitted.

It has not been established that National and the Debtor had an ongoing business relationship. As far as can be determined by the evidence before this Court, the only work done by National under this contract consisted of an energy audit, which was apparently conducted sometime in the Spring of 1981.

National alleges that its audit uncovered an overpayment of $107,929.20 by the

Debtor to the Massachusetts Electric Company. The overpayment was brought to the Debtor's attention in a letter dated June 3, 1981. The Debtor claims that this letter, and any recommendations contained therein, never resulted in any reduction of their expenses. National alleges that certain substantial credits appeared on the Debtor's statements from the Massachusetts Electric Company for February 1982 and that these credits were a refund for the overpayment pointed out in its letter of June 3, 1981. National contends that their recommendations were acted upon by the Debtor, and thereby accepted, and that they resulted in a post-petition benefit to the Debtor's estate of between $49,737.84 and $102,925.20.

On June 26, 1981, the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. National was not listed as a creditor on any of the Debtor's bankruptcy schedules. The Court confirmed the Debtor's Plan of Arrangement on May 24, 1983.

On June 23, 1983, National received a letter from the Debtor. This letter informed National that Arnold Print Works had filed Chapter 11 proceedings on June 26, 1981 and that it was in the process of being liquidated. The Debtor also gave National the name and address of the attorney who was handling their bankruptcy. This was apparently the first notice that National received regarding the Debtor's filing.

National alleges that over the following six to seven months it made repeated attempts to correspond with the Debtor's attorney, seeking information and offering to compromise its claim. National alleges that it received no response to its inquiries until the Debtor's attorney sent National a letter on February 23, 1984. In that letter, the Debtor's attorney offered the opinion that National was barred from participation in this case because of its failure to timely file a proof of claim. Upon receipt of that letter, National retained Bankruptcy counsel and, approximately two months later, on April 19, 1984, initiated these proceedings.

## DISCUSSION

National petitions this Court to allow it to file a late claim for $51,462.60, representing half of the potential benefit which the Debtor's estate allegedly enjoyed as a result of National's recommendations. National requests that this Court extend the time for filing proofs of claim because it received no notice of the Debtor's filing in Bankruptcy until June 23, 1983, two years after the original filing and approximately a month after a Liquidating Plan of Reorganization was confirmed by this Court.

Although "the law should be strictly observed with regard to time limitations for the filing of claims," *In re H. & C. Table Co., Inc.,* 457 F.Supp. 858, 860 (W.D.Tenn. 1978), the courts have under certain rare circumstances allowed claims to be filed after a reorganization plan was confirmed. Among these are situations where a known creditor had no notice of the bankruptcy proceedings. *In re Intaco Puerto Rico, Inc.,* 494 F.2d 94 (1st Cir.1974); *In re Harbor Tank Storage Co.,* 385 F.2d 111 (3rd Cir.1967); *In re Sullivan Ford Sales, Inc.,* 25 B.R. 400 (Bankr.D.Me.1982). In the present case, National must be considered a "known creditor" even though its claim is disputed by the Debtor. National should have been listed by the Debtor on the schedules at least as a disputed or potential claim, in light of the fact that National claims to have sent letters and made telephone calls to the Debtor concerning this account for two years prior to receiving actual notice of the bankruptcy. National was entitled to notice and cannot logically be required to have filed a claim before having received actual notice. "Under the circumstances, the Bankruptcy Court has the equitable power to allow (this) late filed claim ... to prevent injustice." *In re H. & C. Table Co., Inc., supra,* at 860, citing *In re Comac, Co.,* 402 F.Supp. 43 (E.D.Mich. 1975).

Notwithstanding the above, the Debtor persuasively argues that the focus in this

case should not be on when National received notice of the Bankruptcy, but on what it did after it received that notice. Although National could not be required to file a proof of claim before it received notice in June of 1983, it does not follow that National could wait indefinitely thereafter to file its claim. "Trustees, creditors, debtors, and even bankruptcy judges are entitled to some measure of finality in bankruptcy proceedings." *In re Evanston Motor Co., Inc.,* 26 B.R. 998, 1005 (Bankr. N.D.Ill.1983), aff'd 735 F.2d 1029 (7th Cir. 1984).

The June 23, 1983, letter informed National that Arnold Print Works had filed Chapter 11 proceedings almost two years earlier and that the Debtor was in the process of liquidation. The length of time since the original filing and the fact that a liquidation was in progress should have indicated to National that time was of the essence for the filing of its claim. There is some evidence that National realized the need for haste. On a copy of the June 23rd letter submitted to this Court, there is a hand written notation, apparently made by someone at National, which says "6/28 If dates are favorable late filing can be accomplished." Despite this, National waited until April 19, 1984, a period of almost ten months, before initiating these proceedings.

A number of courts have refused to allow late filing of proofs of claims when the creditor has failed to file within six months of receiving notice of the bankruptcy. *See, e.g., In re Fabric Buys,* 28 B.R. 513, 10 B.C.D. 430 (Bankr.S.D.N.Y.1983); *In re CBS Millwork Supply, Inc.,* 21 B.R. 960 (Bankr.E.D.Pa.1982); *In re Popular Fruit & Produce, Inc.,* 21 B.R. 185 (Bankr.S.D.N.Y.1982). Although the six months period cannot be considered a rule, because the circumstances in each case are different, National's actions after receiving notice of the bankruptcy constitute "dilatory behavior" under the circumstances. *In re Fabric Buys, Inc., supra,* 28 B.R. 513, 10 B.C.D. at 431, 432. National's only actions during the ten months following actual receipt of the notice, were allegedly to send several letters to the Debtor's attorney of which not even a single copy was presented to this Court. Given the size of National's claim, the length of time that had passed since the original bankruptcy filing, and National's knowledge that the Debtor was in the process of liquidation, National's efforts were insufficient and the Court finds that National should have filed its claim much sooner.

## CONCLUSION

The Court finds that, although National could not have filed a claim prior to receiving notice of the Bankruptcy on June 23, 1983, National delayed filing its claim for an unreasonable amount of time after receiving the notice.

In view of the foregoing, and in consideration of the record in this case, and all arguments of counsel, whether or not specifically mentioned, the Court declines to extend the time within which proofs of claim may be filed.

## ORDER

The motion of National Utility Service to file a late proof of claim is hereby denied.