

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2008

# In Re:MansarayRuffin

Precedential or Non-Precedential: Precedential

Docket No. 05-4790

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"In Re:MansarayRuffin " (2008). *2008 Decisions.* Paper 932.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/932

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4790
_____


IN RE: JANICA MANSARAY-RUFFIN,

Debtor


SLW CAPITAL, LLC

v.

JANICA MANSARAY-RUFFIN;
WILLIAM C. MILLER


Janica Mansaray-Ruffin,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-03703)
District Judge: Honorable Eduardo C. Robreno

_____

Argued December 13, 2007

Before:  RENDELL, GREENBERG, and VAN
ANTWERPEN, Circuit Judges

(Filed:  June 24, 2008)

_____

David A. Scholl, Esq.   **[ARGUED]**
Regional Bankruptcy Center
    of Southeastern Pennsylvania
6 St. Albans Avenue
Newtown Square, PA   19073-0000

*Counsel for Debtor-Appellant*
    *Janica Mansaray-Ruffin*


David B. Banks, Esq.   **[ARGUED]**
Banks & Banks
3038 Church Road
Philadelphia, PA   19444-0000

*Counsel for Plaintiff-Appellee*
    *SLW CAPITAL, LLC*

_____

OPINION OF THE COURT

_____


RENDELL, <u>Circuit Judge</u>.

This appeal requires us to determine whether the debtor in a Chapter 13 bankruptcy case successfully invalidated a lien on her property by providing for it as an unsecured claim in her confirmed plan, without initiating an adversary proceeding as required by the Federal Rules of Bankruptcy Procedure. We agree with the lienholder, as well as with the Bankruptcy Court and the District Court, that the answer to this question is no. Accordingly, we will AFFIRM.

**I.**

On November 26, 1996, Janica Mansaray-Ruffin borrowed $25,600 from United Companies Lending Corporation ("United") and, as collateral for that loan, executed a mortgage in favor of United against her primary residence — 5101 West Girard Avenue, Philadelphia, PA 19131. The mortgage was recorded as a first lien against the property. United later assigned the mortgage to EMC Mortgage Corporation ("EMC"), and, after the instant appeal was filed, EMC assigned the

mortgage to SLW Capital, LLC ("SLW"), making SLW the proper appellee.

On February 27, 2002, Mansaray-Ruffin's counsel sent a letter to EMC, claiming that United had committed a number of violations of the Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, in connection with the initial execution of the mortgage. Counsel made clear in the letter that, based on these violations, Mansaray-Ruffin was asserting "a right to rescind the transaction, pursuant to 15 U.S.C. § 1635 of TILA, which she hereby exercises." (App. 30-31.) It does not appear that EMC ever responded to this letter.

On August 13, 2002, Mansaray-Ruffin filed a voluntary Chapter 13 bankruptcy petition and a Chapter 13 reorganization plan with the United States Bankruptcy Court for the Eastern District of Pennsylvania and, in the accompanying schedules, listed EMC as a disputed secured creditor. The plan included the following regarding EMC:

> In addition, the Debtors shall file adversary proceedings seeking to rescind or otherwise avoid in whole or in part the secured claims arising from the mortgage[] held against her residential realty by EMC . . . . However, the Debtor does anticipate making payments on the first and larger of these loans directly to EMC outside of the Plan

4

to protect her interests in the event that the proceedings are not entirely successful.

(Original Chapter 13 Plan of Debtor.) On August 31, 2002, EMC was mailed notice of Mansaray-Ruffin's plan, including the deadline for filing a proof of claim. EMC did not file a proof of claim — either before or after the December 31, 2002 bar date.

On February 19, 2003, Mansaray-Ruffin filed an amended plan, a copy of which she had mailed to EMC the day before. The amended plan replaced the above-quoted language with the following:

The Debtor planned to file a further adversary proceeding to avoid in whole or in part the secured claim allegedly arising from the first mortgage held against her residential realty by [EMC]. However EMC has not filed a proof of claim in this bankruptcy case. The Debtor will therefore file a proof of claim in the amount of $1000 on behalf of EMC, and will resort to an adversary proceeding against EMC only in the event that EMC successfully amends that claim and asserts a larger or a secured claim. The Debtor has been paying the regular mortgage payments to EMC outside of the plan in the event that her challenge of the claim of EMC would not

5

be entirely successful. However, upon confirmation of this plan, in which the claim of EMC will be fixed as an unsecured claim in the amount of $1000 unless it is able to object to this claim, the Debtor will cease making payments to EMC, and EMC will be obliged to satisfy its mortgage against the Debtor's home upon the discharge of its debt as filed or allowed.

(App. 34.) That same day, Mansaray-Ruffin filed an unsecured proof of claim on behalf of EMC in the amount of $1,000, with the following notation: "ALLEGED MORTGAGE - RESCINDED." (App. 32.)[1]

Neither EMC nor any other creditor filed objections to the plan, and it was confirmed on March 25, 2003. Thereafter, however, EMC continued to send Mansaray-Ruffin billing statements, as if the plan's confirmation had no effect on the mortgage. Mansaray-Ruffin sent EMC two letters, explaining her position that, under the terms of the plan, she now owed EMC a $1,000 unsecured debt (not the approximately $40,000 mortgage-backed balance that EMC was asserting).

---

[1] Although it notes in its brief that the proof of claim filed by Mansaray-Ruffin was untimely, SLW does not argue that this should factor into our decision.

In December 2003, EMC commenced an adversary proceeding in the Bankruptcy Court by filing a "Complaint to Determine Secured Status Pursuant to 11 U.S.C. § 506." EMC sought a determination that, under Federal Rule of Bankruptcy Procedure 7001(2), a lien could only be invalidated through an adversary proceeding and that, therefore, its mortgage continued unaffected by the plan confirmation. Mansaray-Ruffin countered with a motion to dismiss, contending that the confirmed plan was final under the Bankruptcy Code and that EMC had to live with the consequences of not objecting to her treatment of its claim.

On May 6, 2004, the Bankruptcy Court denied Mansaray-Ruffin's motion to dismiss, concluding that "neither the Debtor's proof of claim, filed on behalf of EMC, nor the Debtor's amended plan, nor both taken together, are sufficient to avoid EMC's lien." (App. 2.) On July 6, 2004, the Court followed up its denial of the motion to dismiss by issuing an order that "EMC shall retain its first mortgage lien on the Debtor's residence . . . , that said mortgage shall be unaffected by the Debtor's confirmed Plan of Reorganization and that said mortgage shall pass through the bankruptcy unaffected to the full extent of the outstanding balance due EMC in connection with the underlying mortgage loan." (App. 4.)

On September 26, 2005, the District Court affirmed the Bankruptcy Court's order without explanation.

7

## II.

The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. § 1334, the District Court had jurisdiction pursuant to 28 U.S.C. § 158(a), and we now have jurisdiction pursuant to both 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. In conducting our review, we use the same standards as the District Court. *In re Am. Classic Voyages Co.*, 405 F.3d 127, 130 (3d Cir. 2005). Therefore, since the issues in this case are legal in nature, we review the decision of the Bankruptcy Court de novo. *Id.*

## III.

## A.

We begin with a discussion of the applicable law governing the procedure for invalidating liens in bankruptcy. The United States Supreme Court prescribes rules of practice and procedure for bankruptcy cases. 28 U.S.C. § 2075. The rules are not to "abridge, enlarge, or modify any substantive right." *Id.* Pursuant to this authority, the Court has promulgated the Federal Rules of Bankruptcy Procedure.

Federal Rule of Bankruptcy Procedure 7001 sets forth matters that may only be resolved through an "adversary proceeding," including the determination of the "validity, priority, or extent of a lien or other interest in property." Fed. R.

8

Bankr. P. 7001(2).[2]  An adversary proceeding is essentially

[2]  Rule 7001 provides in its entirety:

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002;

(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);

(3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property;

(4) a proceeding to object to or revoke a discharge;

(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

9

a self-contained trial — still within the original bankruptcy case — in which a panoply of additional procedures apply. *See* Fed. R. Bankr. P. 7001-7087. Many of these procedures derive in whole or in part from the Federal Rules of Civil Procedure, giving an adversary proceeding all the trappings of traditional civil litigation. For example, Federal Rule of Bankruptcy Procedure 7003 adopts wholesale Federal Rule of Civil Procedure 3 and thus requires the filing of a complaint to commence an adversary proceeding. Adopting and modifying portions of Federal Rule of Civil Procedure 4, Federal Rule of

---

(6) a proceeding to determine the dischargeability of a debt;

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

Bankruptcy Procedure 7004 requires the service of a summons and a copy of the complaint. Federal Rule of Bankruptcy Procedure 7012 provides that the defendant has 30 days to file an answer after the issuance of the summons and makes Federal Rule of Civil Procedure 12(b)-(h) applicable in its entirety, thus allowing, *inter alia*, all of the 12(b) defenses, motions for a more definite statement, and judgments on the pleadings. Moreover, an adversary proceeding offers the parties the same opportunity for discovery as traditional civil litigation, and the rules regarding voluntary and involuntary dismissals, default judgments, and summary judgment are identical as well. *See* Fed. R. Bankr. P. 7026-7037, 7041, 7055-7056 (making Fed. R. Civ. P. 26-37, 41, and 55-56 applicable to adversary proceedings).

The Rules are binding and courts must abide by them unless there is an irreconcilable conflict with the Bankruptcy Code. *See In re Am. Classic Voyages Co.*, 405 F.3d at 132; *In re McKay*, 732 F.2d 44, 47-48 (3d Cir. 1984); *In re Decker*, 595 F.2d 185, 189 (3d Cir. 1979). The three concepts included in Rule 7001(2) — validity, priority, and extent — all pertain in some way to "the basis of the lien itself." Fed. R. Bankr. P. 3012 advisory committee's note. The "validity" of a lien — which, unlike "priority" and "extent," is at the heart of the case before us — refers to its "legal force." *American Heritage*

11

*Dictionary of the English Language* (4th ed. 2004).[3]  The debtor here referred to the concept of commencing an adversary proceeding against EMC in her original plan and her amended plan, but none was ever initiated.

**B.**

Mansaray-Ruffin argues that she has successfully invalidated EMC's lien without an adversary proceeding because (1) she filed an unsecured proof of claim on EMC's behalf, (2) she treated EMC's claim as unsecured in her plan, (3) EMC failed to object to the treatment of its claim as unsecured, and (4) the Bankruptcy Code generally makes all confirmed plans final.

At the outset, it must be noted that bankruptcy has traditionally afforded special status to liens, allowing them to pass through bankruptcy unaffected.  *See, e.g., Long v. Bullard*, 117 U.S. 617, 620-21 (1886).  As the United States Court of Appeals for the Fourth Circuit explained:

---

[3] Other courts have defined "validity" similarly in the context of Rule 7001(2).  *See, e.g.*, *In re Hudson*, 260 B.R. 421, 433 (Bankr. W.D. Mich. 2001) (defining "validity" as "having legal strength or force" or "enforceable"(internal quotation marks omitted)); *In re Beard*, 112 B.R. 951, 955 (Bankr. N.D. Ind. 1990) (defining the "validity" of a lien as "the existence or legitimacy of the lien itself").

[T]he general rule [is] that liens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only *in personam* claims against the debtor(s), but generally has no effect on an *in rem* claim against the debtor's property. For a debtor to extinguish or modify a lien during the bankruptcy process, some affirmative step must be taken toward that end. Unless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation.

*Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 92 (4th Cir. 1995) (citations omitted).

Mansaray-Ruffin maintains that a secured creditor cannot have its lien "ride through" bankruptcy unaffected if the debtor files an unsecured claim on its behalf. (Appellant's Reply Br. 3.) She therefore proposes that the proof of claim that she filed was a proper "affirmative action" to invalidate EMC's lien. She cites no authority for this proposition and we can find none. Thus, we conclude that the proof of claim that Mansaray-Ruffin filed on behalf of EMC did not invalidate EMC's lien.[4]

---

[4] In addition, we note that EMC's failure to file a proof of claim has no legal significance. Filing a proof of claim is not mandatory, and a secured creditor's failure to do so does not

Next, Mansaray-Ruffin argues that the provision in her confirmed plan treating EMC's claim as unsecured operated to invalidate EMC's mortgage lien. She relies on cases that have permitted liens to be "stripped," pursuant to § 506 of the Code, through the confirmation of a plan. *See, e.g.*, *In re Bennett*, 312 B.R. 843 (Bankr. W.D. Ky. 2004); *In re Dickey*, 293 B.R. 360 (Bankr. M.D. Pa. 2003); *In re Hudson*, 260 B.R. 421 (Bankr. W.D. Mich. 2001); *In re Wolf*, 162 B.R. 98 (Bankr. D.N.J. 1993). The problem with Mansaray-Ruffin's reliance on these cases is that the concept of "lien stripping" is related to the valuation of collateral, not the validity of a lien, and, as she has acknowledged in her brief and at oral argument, she challenges the validity of the lien itself, not the valuation of the collateral securing it. Therefore, these cases have no bearing on whether Mansaray-Ruffin could invalidate EMC's lien by using a provision to that effect in her plan.

Mansaray-Ruffin also cites a number of cases in which a debtor successfully fixed the amount of a secured claim at an amount less than the creditor asserted by providing for such lesser amount in her plan. *See In re Fesq*, 153 F.3d 113 (3d Cir. 1998); *In re Holmes*, 225 B.R. 789 (Bankr. Colo. 1998). Like the lien-stripping cases, these cases, too, do not involve a challenge to the validity of the lien itself and thus have no

result in the loss of its lien. *See* 11 U.S.C. §§ 501(a), 506(d)(2); *Cen-Pen Corp.*, 58 F.3d at 93-94.

14

bearing on whether Mansaray-Ruffin could invalidate EMC's lien by treating it as an unsecured claim in her plan.

The Bankruptcy Code does state that a plan may include "any other appropriate provision not inconsistent with" the Code. 11 U.S.C. § 1322(b)(11). However, we have previously considered whether a provision in a plan can invalidate a lien — which would run afoul of the Rules but not any specific provision of the Code itself — and have ruled that this "substantive catch-all provision" does not leave courts free to disregard the Rules. *McKay*, 732 F.2d at 48. In *McKay*, two debtors filed Chapter 13 bankruptcy plans, both of which provided that "Debtor avoids liens avoidable under 11 U.S.C. § 522(f)." *Id.* at 45. Section 522(f), which is not at issue here, allows for the avoidance of certain liens to take advantage of exemptions. Pennsylvania's Department of Public Welfare ("DPW"), a creditor of both debtors, objected to the confirmation of each plan, arguing that § 522(f) lien avoidance could not be achieved through the confirmation process because it involved the determination of the "validity, priority, or extent of a lien" and thus fell under what is now Rule 7001(2). *Id.* at 46. The bankruptcy court confirmed both plans, notwithstanding this objection. On appeal, we agreed with DPW and reversed, "hold[ing] that where a debtor seeks to avoid a judicial lien pursuant to 11 U.S.C. § 522(f), the adversary proceedings rules adopted by the Bankruptcy Code apply, and that the debtor thus bears the burden of filing a complaint with the bankruptcy court and servicing a copy of it

15

on each creditor whose lien the debtor seeks to avoid." *Id.* at 45. *McKay* confirms that when an adversary proceeding is required under Rule 7001(2), courts are not free to disregard the Rule.[5]

As we have previously explained, "'[a]s a general matter, the Code defines the creation, alteration or elimination of substantive rights but the Bankruptcy Rules define the process by which these privileges may be effected.'" *Fesq*, 153 F.3d at 116 (alteration in original) (*quoting In re Hanover Indus. Mach. Co.*, 61 B.R. 551, 552 (Bankr. E.D. Pa. 1986)). The Rules are there for a reason.

It is appropriate that the Rules permit lien invalidation to occur only through litigation in an adversary proceeding — and not through a provision in a plan — for the invalidation of a lien on the property of the debtor held by a specific creditor is a matter of particularly great consequence, in terms of the applicable legal principles and the practical result. As discussed above, an adversary proceeding provides the lienholder with "greater procedural protection," *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 451 (2004), requiring a complaint and a

[5] The Bankruptcy Rules have been amended and now provide that lien avoidance pursuant to § 522(f) can be achieved by motion and no longer requires an adversary proceeding. *See* Fed. R. Bankr. P. 4003(d), 7001(2), 9014; *McKay*, 732 F.2d at 47 & n.8. This change, however, has no effect on *McKay*'s relevance here.

16

summons, providing for an answer and discovery, and generally concluding only after trial or a dispositive motion.

In contrast, the Rules establish less exacting requirements for the confirmation of a bankruptcy plan, a process which entails virtually none of the procedural safeguards of an adversary proceeding. Under Federal Rule of Bankruptcy Procedure 2002, "parties in interest," including creditors, must receive notice by mail at least 25 days before both the deadline for filing objections to the plan and the date of the required confirmation hearing. Crucially, plan confirmation does not require the filing of a complaint or the service of a summons. Moreover, in the Chapter 13 context, the notice sent need not even include a full copy of the proposed plan; rather, a summary of the plan can suffice. Fed. R. Bankr. P. 3015(d). Therefore, as the United States Court of Appeals for the Tenth Circuit recently put it, confirmation "does not require specific notice of a plan provision's effect on a particular creditor, nor does it require notice to be served in any particular manner or upon any particular person." *In re Mersmann*, 505 F.3d 1033, 1043 (10th Cir. 2007). In addition, an objection to the confirmation of a Chapter 13 plan is a "contested matter," governed by Federal Rule of Bankruptcy Procedure 9014. Fed. R. Bankr. P. 3015(f). Contested matters are more informal than adversary proceedings, are initiated by motion (not by a complaint), and, unless the court directs otherwise, do not require a responsive pleading. Fed. R. Bankr. P. 9014; *In re Indian Palms Assocs.*, 61 F.3d 197, 204 n.11 (3d Cir. 1995).

17

Mansaray-Ruffin also contends that by failing to object to the plan after receiving a copy of it in the mail, EMC waived its right to challenge the plan's invalidation of its lien. While there is visceral appeal to this argument, it does not withstand scrutiny. In order for us to credit Mansaray-Ruffin's position, we would have to find that EMC's failure to object somehow constituted a waiver of Rule 7001 and all of the procedural protections that go with it (i.e., Rules 7002-7087). This, we cannot do. By way of analogy, if a plaintiff were to attempt to "commence" a civil litigation by filing a motion with the district court and mailing a copy of it to the defendant, and the defendant were to fail to file a pleading in response, we surely would not uphold the entry of a default judgment on behalf of the plaintiff. In that situation, the plaintiff has the affirmative duty to file a complaint and to serve a summons with a copy of the complaint on the defendant. *See* Fed. R. Civ. P. 3-4. This duty is not lessened or negated by the defendant's inaction. Similarly, EMC's failure to object to the plan did not do away with Mansaray-Ruffin's duty to file a complaint and serve EMC pursuant to Rules 7001, 7003, and 7004. EMC had the legal right to do nothing and insist upon being served with a summons and a complaint in order for its lien to be invalidated.

The only issue that remains is whether, because Mansaray-Ruffin's plan treating EMC's lien as invalid has been confirmed, it should be deemed final and controlling notwithstanding her failure to follow the Rules.

The Bankruptcy Code does provide that the terms of a confirmed plan are binding. 11 U.S.C. § 1327.[6] In *In re Szostek*, we explained that, "[u]nder § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation." 886 F.2d 1405, 1408 (3d Cir. 1989). In that case, a secured creditor sought the revocation of the debtor's confirmed Chapter 13 plan because the plan failed to provide for the full recovery of the present

---

[6] This Code section, titled "Effect of Confirmation," provides:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

value of its claim. In finding for the debtor, we invoked § 1327 and the "well settled law that a confirmed plan is final." *Id.* at 1408-10. Quoting from our opinion in *In re Penn Central Transportation Co.*, 771 F.2d 762, 767 (3d Cir. 1985), we emphasized our view that:

> the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*Szostek*, 886 F.2d at 1409 (internal quotation marks omitted).

However, in *Szostek*, the secured creditor argued that the plan provision setting forth the amount to which it was entitled violated the Code, namely, 11 U.S.C. § 1325(a)(5), because the provision failed to require the payment of interest necessary for the secured creditor to receive the present value of the claim.

20

We examined whether this Code provision was mandatory, stating that "[i]f the provisions of § 1325(a)(5) are mandatory, as [the creditor] contends, then a plan cannot be confirmed if it does not meet the requirements of that section." *Id.* at 1411. We concluded that this provision was not mandatory. *Id.* at 1412. Thus, while *Szostek* does note the importance of finality, it recognizes that the policy of finality must yield to the principle that a plan cannot violate a mandatory provision of the Code.

We hold that the adversary proceeding Rule at issue here is mandatory and establishes a right to specific process that must be afforded. Its mandatory nature is grounded in principles of due process that trump "finality." *See In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993) ("[W]e cannot defer to [a Chapter 13 confirmation] order on *res judicata* grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution.").

The level of process due to a party prior to the deprivation of a property interest, such as a lien, is highly dependent on the context. As the Supreme Court has repeatedly emphasized, "'[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001) (*quoting Cafeteria & Rest. Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961)). Thus, process that may be constitutionally sufficient in one setting may be insufficient in another.

21

Highlighting the contextual nature of the calculus, the Court famously explained almost sixty years ago that "[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing *appropriate to the nature of the case*." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (emphasis added); *see also id.* at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, *under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (emphasis added)); *id.* at 314-15 ("[I]f *with due regard for the practicalities and peculiarities of the case* these conditions are reasonably met the constitutional requirements are satisfied." (emphasis added)).[7]

Accordingly, we have refused to treat confirmed bankruptcy plans as res judicata with respect to the claims of

---

[7] For example, it is well established that notice of bankruptcy proceedings by publication is generally sufficient to protect the procedural due process rights of unknown creditors, but not those of known creditors. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 488-90 (1988); *City of New York v. N.Y., N.H. & H.R. Co.,* 344 U.S. 293, 296 (1953); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995).

22

creditors who did not receive notice that was sufficient under the circumstances — even where adherence to the plain language of the relevant statute would have made the confirmed plan binding on all creditors. *Jones v. Chemetron Corp.*, 212 F.3d 199, 209-10 (3d Cir. 2000) (finding that despite 11 U.S.C. § 1141, the analog to § 1327 in the Chapter 11 context, "[u]nder fundamental notions of procedural due process, a claimant who has no appropriate notice of a bankruptcy reorganization cannot have his claim extinguished in a settlement thereto" (*citing*, *inter alia*, *Mullane*, 339 U.S. at 314-19)); *In re Harbor Tank Storage Co.*, 385 F.2d 111, 114-15 (3d Cir. 1967).

In addition, we have indicated that a creditor's actual knowledge regarding the bankruptcy proceedings does not eliminate our due process concerns. *Harbor Tank Storage*, 385 F.2d at 114-16. In *Harbor Tank Storage*, a known creditor filed a claim after the debtor's bankruptcy plan had already been confirmed under Chapter X of the now-superseded Bankruptcy Act. *Id.* at 112. The creditor argued that it should be permitted to file a post-confirmation claim because, although the debtor had published notice of the bankruptcy proceedings and the important dates in the local newspaper, the debtor had not mailed the creditor the various notices required by the statute. *Id.* The debtor countered that the creditor's claim should be barred because the statute made confirmed plans "'binding upon . . . all creditors'" and because the creditor had actually known about the bankruptcy proceeding and had done nothing to protect its interests until after confirmation. *Id.* at 114-15

23

(*quoting* 11 U.S.C. § 624(1) (repealed by Pub. L. No. 95-598, 92 Stat. 2549 (1978))). According to the debtor, the creditor "should have independently checked on the progress of the proceedings, and should have filed his claim without waiting for notice to do so." *Id.* at 115.

We agreed with the creditor on due process grounds, explaining that "the fact that a creditor knows of the initiation of reorganization proceedings does not of itself place a burden on the creditor to file an appearance or claim in the proceeding before receiving notice to do so." *Id.* We went on to state unequivocally that "a creditor has every right to assume that he will be sent all the notices to which he is entitled under the Act." *Id.* at 115. Thus, we made clear that there are statutory procedural requirements that bear directly on the level of process due to a party in a particular situation.

A number of our sister courts of appeals have concluded, based on these due process principles, that, despite any statutory prescription of finality or any knowledge that the creditor may have, a confirmed plan has no preclusive effect on issues that must be raised in an adversary proceeding, if no such proceeding has been brought.

*In re Banks*, 299 F.3d 296 (4th Cir. 2002), involved a controversial debtor tactic that has come to be known as "discharge by declaration." Federal Rule of Bankruptcy Procedure 7001(6) requires an adversary proceeding in order to

24

discharge student loan debt. Further, under 11 U.S.C. § 523(a)(8), student loans may not be discharged in a Chapter 13 bankruptcy unless the debtor establishes that continuing liability for the loan would cause him or her "undue hardship." In *Banks*, a Chapter 13 debtor sought to discharge a portion of his student loan debt by including a provision to that effect in his plan and did not initiate an adversary proceeding. 299 F.3d at 298-99. The plan was confirmed without objection, or even an appearance at the confirmation hearing, by the creditor, and the creditor did not appeal the confirmation order. *Id*. at 299. Further, the creditor did not dispute that it received a copy of the proposed plan, a hearing notice, and the confirmation order. *Id*. Five years after plan confirmation, the bankruptcy court issued a discharge order. *Id*. When the debtor then received a statement from the creditor that still included the student loan debt, he sought a declaration from the bankruptcy court that the confirmed plan's treatment of the disputed debt was final. *Id*. The bankruptcy court agreed with the debtor. *Id*.

The United States Court of Appeals for the Fourth Circuit, however, ruled in the creditor's favor, finding that the debtor's failure to initiate an adversary proceeding — complete with the complaint, summons, and service of process required by Rules 7003 and 7004 — overrode § 1327's finality provision. *Id*. at 302-03. The court explained: "We agree a bankruptcy court confirmation order generally is afforded a preclusive effect. But we cannot defer to such an order if it would result in a denial of due process in violation of the Fifth Amendment to the United

25

States Constitution." *Id.* at 302 (footnote omitted). In concluding that such a denial would result in the situation before it, the court held that "[w]here the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect." *Id.*, *quoted with approval in Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008).

In *In re Ruehle*, 412 F.3d 679, 684 (6th Cir. 2005), another Chapter 13 discharge-by-declaration case, the United States Court of Appeals for the Sixth Circuit followed *Banks*'s lead in ruling that discharging student loan debt through a provision in a confirmed plan, and without the adversary proceeding required by Rule 7001(6), violates the creditor's due process rights. It did not matter that the creditor did not raise its due process challenge until four years after the plan's confirmation because, the court explained, "[e]very person and entity is entitled to the prescribed level of notice for the process to be due and only thereafter may the coercive power of the government be used against them." *Id.* at 682, 684-85 (internal quotation marks omitted). Because the debtor failed to commence an adversary proceeding and serve the creditor with a summons and a complaint, the discharge of the disputed debt in the plan could not be given effect. *Id.* at 684-85.

26

In *In re Hanson*, 397 F.3d 482 (7th Cir. 2005), the court faced a slightly different situation. There, the debtor's plan did not provide for the discharge of his student loan debt, but the discharge order erroneously approved by the bankruptcy court did. *Id.* at 483-84. As in *Banks* and *Ruehle*, Rule 7001(6) was ignored and no adversary proceeding was ever initiated. *Id.* at 485. Six years after the discharge order, the creditor filed a motion in the bankruptcy court to void it. *Id.* at 483. The bankruptcy court granted the motion, *id.*, and the United States Court of Appeals for the Seventh Circuit agreed, concluding that student loan creditors have the due process right not "to act until the service of a summons for an adversary proceeding apprises them that their property rights may be affected," *id.* at 486-87. Invoking both *Banks* and *Mullane*, it reasoned: "Although we recognize the strong policy favoring finality of confirmation orders, due process entitles creditors to the heightened notice provided for by the Bankruptcy Code and Rules, and the dictates of due process trump policy arguments about finality." *Id.* at 486.

In a context that did not implicate Rule 7001, the United States Court of Appeals for the Ninth Circuit has also endorsed the notion that, where an adversary proceeding is required, the preclusive effect of a confirmation order is limited. *In re Enewally*, 368 F.3d 1165, 1173 (9th Cir. 2004). In *Enewally*, a creditor held a lien on a property owned by joint chapter 13 debtors and, even though Rule 7001 did not require it, the debtors filed an adversary complaint against the creditor, seeking to modify the lien amount based on the value of the collateral. *Id.*

27

at 1167-68. While the adversary proceeding was pending, the bankruptcy court confirmed the debtor's plan. *Id.* at 1168. When, in the still-pending adversary proceeding, the creditor later challenged the debtors' modification of its lien, the debtors argued that § 1327 precluded the creditor from doing so. *Id.* at 1172. The Court of Appeals for the Ninth Circuit disagreed on due process grounds and explained:

> Here, during plan confirmation and modification, the bankruptcy court specifically reserved the question at issue because it had been raised via an adversary proceeding. "[I]f an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." Thus a Chapter 13 plan confirmed while an adversary proceeding was pending would not have *res judicata* effect on the adversary proceeding.

*Id.* at 1173 (*quoting Cen-Pen Corp.*, 58 F.3d at 93-94).

Before it could be deprived of its property interest in its lien, EMC had the constitutional right to a level of process that was "appropriate to the nature of the case." *See Mullane*, 339 U.S. at 313. As we emphasized above, our determination regarding the process due in any particular case depends on the context. A crucial piece of the context here is the existence of a

28

binding Federal Rule of Bankruptcy Procedure directly on point that makes clear that a lien may only be invalidated through an adversary proceeding. Just as a procedural prescription in the statute guided us in determining the process due to the creditor in *Harbor Tank Storage*, 385 F.2d at 114-15, a procedural prescription in the Rules guides us here. In *Harbor Tank Storage*, we found that a creditor had the due process right "to assume that he w[ould] be sent all the notices to which he [wa]s entitled under the Act" before his claim could be barred. *Id.* at 115. Similarly, we now conclude that EMC had the due process right to assume that, unless Mansaray-Ruffin commenced the adversary proceeding required by the Rules and served it with a complaint and a summons, its lien could not be invalidated. Whatever actual knowledge EMC may have had regarding the plan's treatment of its lien did not eliminate this right and neither did the provisions of § 1327.

We wish to make clear, however, that we do not hold that the failure to adhere to every Rule of Bankruptcy Procedure implicates due process. Rather, we hold only that, where the Rules require an adversary proceeding — which entails a fundamentally different, and heightened, level of procedural protections — to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one. This

29

conclusion fits comfortably with the precedents we have discussed from our sister circuit courts.[8]

In arguing that the Code's policy of finality should control, Mansaray-Ruffin relies on our opinion in *In re Fesq*, 153 F.3d 113 (3d Cir. 1998). She maintains that because SLW is seeking to nullify a central part of the confirmed plan, it is effectively asking us to revoke the Bankruptcy Court's order of confirmation, which, according to *Fesq*, is impermissible absent fraud. *Id.* at 120. In *Fesq*, the creditor held a $70,000 judgment lien on the debtor's home. *Id.* at 114. The debtor's Chapter 13 bankruptcy plan provided for full satisfaction of the creditor's secured claim with a single payment of $7,050. The plan was confirmed without objection from the creditor. *Id.* The creditor then moved to revoke the confirmation order, blaming its failure to file an objection on a computer glitch that caused its attorney to think that the deadline for filing objections was two months later than it actually was. *Id.* at 114-15. We denied the creditor's

---

[8] Our dissenting colleague criticizes our failure to provide guidance as to whether EMC delayed too long — nine months — after confirmation before filing its adversary proceeding. We note that, although Mansaray-Ruffin complains of this delay, she has not briefed this issue or pointed to authority to support the proposition that nine months was too long and/or should have barred EMC's claim. Moreover, *Banks*, *Hanson*, and *Ruehle* all involved inaction by creditors for much longer time periods after plan confirmation.

motion because, under 11 U.S.C. § 1330(a), a confirmed Chapter 13 plan can only be revoked on account of fraud. *Id.* at 120. We emphasized the fact that "Congress established finality as an important goal of bankruptcy law," and we explained that our holding was consistent with that goal. *Id.* at 119-20.

*Fesq*, however, never directly confronted the issue of whether an adversary proceeding was necessary. Further, *Fesq* is distinguishable from our case in two key ways. First, quite simply, SLW is not seeking the revocation of the Bankruptcy Court's confirmation order. Rather, it is asking us to declare that the confirmed plan did not invalidate the lien that it now holds. Second, and even more importantly, *Fesq* did not involve a determination as to the validity of the creditor's lien or any other matter for which Rule 7001 requires an adversary proceeding. Rather, it involved the fixing of the amount of the secured claim, which, like the modification of a claim to comport with the value of the collateral in the lien-stripping cases discussed above, is not the same as lien invalidation. Thus, *Fesq* does not implicate the due process concerns that animate our decision in this case, and it does not control either our reasoning or conclusion regarding the issues before us.

31

## IV.

In light of the foregoing, we conclude that the District Court properly held that EMC's lien was not invalidated and passed through Mansaray-Ruffin's bankruptcy unaffected. Accordingly, we will AFFIRM.

Re: In re Mansaray-Ruffin, No. 05-4790

GREENBERG, <u>Circuit Judge</u>, dissenting.

I dissent because it is clear that due process was met with respect to the elimination of EMC's lien notwithstanding Mansaray-Ruffin's violation of the Federal Rules of Bankruptcy Procedure to obtain that relief. I have reached this conclusion even though I agree with the majority that her Chapter 13 reorganization plan included a provision dealing with EMC's mortgage adopted in violation of the Rules because she did not file an adversary proceeding to avoid EMC's lien. The basis for my conclusion is that notwithstanding the Rules violation EMC had adequate notice of the impairment of its lien and an opportunity to object to that adverse treatment and, accordingly, that it received the constitutionally required due process to which it was entitled. Therefore, once the Bankruptcy Court confirmed the plan, the confirmation order bound EMC and precluded it from obtaining relief in the post-confirmation adversary proceeding that we now consider.

It is clear that Mansaray-Ruffin's plan included a provision adopted in violation of the Bankruptcy Rules. Rule 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. Fed. R. Bankr. P. 7001(2). We have determined that under Rule 7001(2) a debtor must initiate an adversary proceeding to avoid a lien. <u>See</u> <u>In re McKay</u>, 732 F.2d

33

44, 45 (3d Cir. 1984) ("[W]here a debtor seeks to avoid a judicial lien pursuant to 11 U.S.C. § 522(f), the adversary proceedings rules adopted by the Bankruptcy Code apply . . . ."). Mansaray-Ruffin did not initiate an adversary proceeding to avoid EMC's lien but, instead, provided in her plan that EMC's claim would be fixed as an unsecured $1,000 claim upon the plan's confirmation. Because the proceedings leading to the approval of her plan did not comply with Rule 7001, if EMC had objected unsuccessfully to the confirmation of her plan during the confirmation hearing and then appealed from the confirmation order, I have no doubt but that I would have voted to reverse the order confirming the plan. Thus, the proceedings at the confirmation hearing could not substitute for an adversary proceeding at which Mansaray-Ruffin could challenge the validity of the lien and I do not suggest that they could do so.

EMC, of course, did not object to confirmation of the plan or appeal from the confirmation order. Instead of taking those opportunities to protect its lien, EMC, quite inexplicably, though on adequate notice that its lien was being eliminated, sat idle in the face of the adoption of the plan. Though I recognize that an attorney for EMC examining the plan might have believed that the plan lawfully could not adversely affect EMC's lien, I cannot understand why the attorney then would not have taken the uncomplicated step of objecting to the plan inasmuch as 11 U.S.C. § 1327(a) provides that "the provisions of a confirmed plan bind the debtor and each creditor." After all, our experience teaches us that attorneys ordinarily are careful to protect their

34

clients' interests and an attorney could not be certain that in the light of section 1327(a) a plan would not be given preclusive effect even with respect to the elimination of EMC's lien.[9]  But instead of objecting, almost nine months after confirmation EMC filed the adversary proceeding leading to this appeal seeking to collaterally attack the confirmed plan.  Accordingly, a situation that should not have raised any significant procedural problems instead presents the divisive issue of whether the Bankruptcy Court's confirmation order binds EMC and precludes EMC from collaterally attacking the plan, even though the plan violated the Bankruptcy Rules.

The Bankruptcy Code provides for the binding effect of confirmed plans.  Under the Code:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a

---

[9]Actually, as I point out below, it is possible that EMC was acting perfectly rationally in not objecting to the plan even though the plan eliminated its lien.  See infra n.6.

plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

In In re Szostek, 886 F.2d 1405 (3d Cir. 1989), we determined that under section 1327 a confirmed plan binds creditors even when the plan violates the Bankruptcy Code and includes unauthorized provisions. In Szostek the debtors filed a plan that proposed payments to a secured creditor but did not propose to pay interest, i.e., present value, on the claim. Id. at 1406. The creditor in Szostek did not timely object to the plan and did not appeal from the confirmation order. Id. at 1407-08. Instead, four months after confirmation, the creditor mounted a post-confirmation challenge to the plan, arguing that the plan violated a provision of the Code by not paying the present value of his claim. Id. at 1408. Though the creditor was correct with respect to the Code violation the bankruptcy court nevertheless found that the plan was not revocable. Id. On appeal, the district court reversed that aspect of the bankruptcy court's ruling and vacated the plan confirmation order. Id. The debtors then appealed to this Court.

36

The issue before us was whether under section 1327 the confirmation order bound the creditor even though the debtors' plan did not provide for the present value of the creditor's claim as required by 11 U.S.C. § 1325(a)(5)(B)(ii). Id. Significantly, in considering this issue we recognized that

> the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

Id. at 1409 (quoting In re Penn Central Transportation Co., 771 F.2d 762, 767 (3d Cir. 1985)). We further stated that "if a creditor ignores the bankruptcy proceedings, he does so at his peril." Id. at 1410 (citing In re Gregory, 705 F.2d 1118, 1123 (9th Cir. 1983)). We also noted the "general rule" that "the acceptance of the plan by a secured creditor can be inferred by the absence of an objection." Id. at 1413. We concluded that

37

"once the . . . plan was confirmed, it became final under § 1327 and, absent a showing of fraud under § 1330(a), it could not be challenged . . . for failure to pay [the creditor] the present value of its claim." Id.

In an opinion citing Szostek another court set forth its meaning perfectly:

> [The secured creditor] was not free blithely to forego its full and fair opportunity to object to the plan's plain terms. Even if issues relating to [the debtor's] liability to [the creditor] could not be finally resolved through a plan confirmation contest, . . . [the secured creditor] ignored the plan confirmation process, and its opportunity to object to confirmation, at its peril.

In re Fili, 257 B.R. 370, 372 (1st Cir. BAP 2001).

Thus, Szostek stands for the rule that "plans that would not be confirmable due to provisions that do not conform to applicable law will nonetheless be given effect if an objection is not raised prior to entry of the confirmation order." In re Bryant, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005). This principle is tempered only by considerations of procedural due process which, of course, concern the notice given creditors of the confirmation proceedings and their opportunity to object to the terms of the plan. Under the Fifth Amendment "[n]o person shall

38

. . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The fundamental requirements of due process are notice and an opportunity to respond. Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir. 1995). In Mullane v. Central Hanover Bank & Trust Co. the Supreme Court stated that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . ." 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950).

A creditor with a secured claim has a property interest and thus is entitled to due process protection before the interest may be impaired. See Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795-800, 103 S.Ct. 2706, 2709-12 (1983); see also Jones v. Chemetron Corp., 212 F.3d 199, 209-10 (3d Cir. 2000) (holding that a confirmation order does not discharge a claim when the claimant did not have notice of the proceedings). Accordingly, a debtor's plan that proposes to adversely affect a creditor's secured claim will bind the creditor only if it was given notice of the proposed adverse action and had an opportunity to be heard on the appropriateness of that action. See In re Linkous, 990 F.2d 160, 162 (4th Cir. 1993).

In this case the conclusion is inescapable that the requirements of due process were met prior to the impairment of EMC's lien notwithstanding Mansaray-Ruffin's violation of the Bankruptcy Rules in achieving relief from the lien. She mailed notice to EMC of her plan, which stated that upon confirmation

39

EMC's claim would be fixed as an unsecured claim of $1,000. After receiving this notice, EMC had multiple opportunities to be heard on the appropriateness of Mansaray-Ruffin's proposed action. For instance, after Mansaray-Ruffin filed a proof of claim on behalf of EMC that stated that EMC's claim was for $1,000 and was unsecured, EMC could have objected to the proof of claim and presented its position to the Bankruptcy Court at a hearing. See 11 U.S.C. § 502. EMC also could have appeared at the plan confirmation hearing and objected to the plan's treatment of its property interest. See 11 U.S.C. § 1324(a). After confirmation, if its objections had been overruled, EMC could have appealed from the confirmation order to the District Court and then, if necessary, to this Court. See 28 U.S.C. § 158. Moreover, if EMC believed that the confirmation order had been procured by fraud, it could have sought revocation of the order within 180 days after the date of the entry.[10] See 11 U.S.C. § 1330.

I realize that sometimes a person will receive a notice buried in a very large and complex document and therefore understandably may overlook the notice. It might be that in such a case a court would hold that the notice, though delivered, was

---

[10]I see no basis at all for a suggestion if it had been made that Mansaray-Ruffin or her attorney was guilty of fraud. Quite to the contrary their conduct was completely transparent. In fact, they practically begged EMC to object to the treatment of its lien by her plan.

inadequate. But that was not the situation here as the amended plan of which EMC had notice was less than two complete pages in length and included the following paragraph:

> 4. The Debtor planned to file a further adversary proceeding to avoid in whole or in part the secured claim allegedly arising from the first mortgage held against her residential realty by EMC Mortgage Corp. ("EMC"). However, EMC has not filed a proof of claim in this bankruptcy case. The Debtor will therefore file an unsecured proof of claim in the amount of $1000 on behalf of EMC, and will resort to an adversary proceeding against EMC only in the event that EMC successfully amends that claim and asserts a larger or a secured claim. The Debtor has been paying the regular mortgage payments to EMC outside of the plan in the event that her challenge of the claim of EMC would not be entirely successful. However, upon confirmation of this plan, in which the claim of EMC will be fixed as an unsecured claim in the amount of $1000 unless it is able to object to this claim, the Debtor will cease making payments to EMC, and EMC will be obliged to satisfy its mortgage against the Debtor's home upon the discharge of its debt as filed or allowed.

App. at 34. I have quoted the plan in full as an appendix to this opinion.

But instead of availing itself of its various opportunities to be heard on the appropriateness of the plan's proposed action with respect to its lien, EMC did not take any action until almost nine months after the Bankruptcy Court confirmed the plan when it brought the adversary complaint leading to this appeal. Significantly, EMC has not contended in these proceedings that it was not aware of the plan and the plan's treatment of its lien nor has it given any explanation for its nine-month delay in challenging the plan. In these circumstances, EMC clearly was afforded due process. Because EMC received due process before its lien was impaired, the confirmed plan binds EMC and precludes it from succeeding in this adversary proceeding even though the proceedings leading to the impairment of its lien did not comply with the Bankruptcy Rules. The critical issue is whether the procedural Rules for adoption of a plan were satisfied and they were.

I understand that my view of this case could encourage a debtor to place what the debtor believed was an unlawful lien-avoidance provision into his or her plan in the hope that an unwary creditor would be caught off-guard and not object to prevent the plan's confirmation. After all, a debtor might believe that the creditor would not pay proper attention to the unlawful provision of the plan. On the other hand is it really too much to expect a creditor receiving a plan filed on behalf of one of its

debtors to examine the plan to see whether, if confirmed, it will adversely affect its lien?

In any event the controlling consideration must be that Congress by providing for the finality of confirmation orders requires that unauthorized provisions in plans be enforced. Clearly, unless and until Congress amends section 1327 to provide that confirmed plans that include unlawful lien-avoidance provisions will not be accorded preclusive effect or, alternatively, expands the basis for post-confirmation objections beyond the narrow fraud grounds in section 1330, we must continue to enforce plans with such provisions as written and why should that not be so?[11] A creditor always can protect itself

---

[11]In Gay v. Creditinform, 511 F.3d 369, 395 (3d Cir. 2007), a case in which we applied the Federal Arbitration Act as Congress wrote it and upheld a contractual provision providing for arbitration even though other courts had found arbitration provisions in similar cases before them to be unconscionable, we indicated with respect to the other cases that "their reasoning if applied logically could result in a significant narrowing of the application of the FAA." We therefore were of the view that whether or not the narrowing "might be a desirable result" it was "not our function to do so" and that "[i]f the reach of the FAA is to be confined then Congress and not the courts should be the body to do so." Inasmuch as there was not a due process notice violation in the proceedings resulting in the confirmation of the amended plan we should take the Gay approach here and hold that if there is to be a modification of section 1327 so that a

43

from an unlawful deprivation of its lien because its property interest cannot be deprived without due process which requires notice and an opportunity to be heard and such protections are adequate to protect against the unconstitutional deprivation of property. EMC has only itself to blame for the loss of its lien.

I realize that the majority contends that EMC did not receive due process because Mansaray-Ruffin violated the Bankruptcy Rules by not initiating an adversary proceeding to avoid its lien. Thus, according to the majority, "EMC had the due process right to assume that, unless Mansaray-Ruffin commenced the adversary proceeding required by the Rules and served it with a complaint and a summons, its lien could not be invalidated."

While I certainly respect the majority's view, I nevertheless dissent because I see no escape from a conclusion that the majority is equating the requirements of constitutional due process to the requirements of the Bankruptcy Rules; thus, it effectively is using the Rules as a proxy for due process in this case. But this linking is unjustified as a nonconstitutionally prescribed proxy can be both over- and under-inclusive with respect to satisfying constitutional requirements. See, e.g., United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008) (stating that a police officer's impoundment of a car pursuant to

confirmed plan does not always bind "each creditor" then Congress and not the courts should made the modification.

44

standardized procedures will most likely, but not always, satisfy the Fourth Amendment's "reasonableness" requirement, and that conversely, an impoundment that is contrary to a standardized procedure or in absence of a standardized procedure is not a per se Fourth Amendment violation). Therefore there may be situations, and this case certainly is one of them, where due process has been met notwithstanding a debtor's violation of the Bankruptcy Rules.

Through the Bankruptcy Code and Rules Congress and the courts have imposed stricter procedural requirements on debtors who seek to invalidate liens than due process of law requires. By raising these standards above the floor set by the Fifth Amendment's due process clause, Congress and the courts have recognized that the invalidation of a lien "is a matter of particularly great consequence . . . ." Thus, under the Rules, a debtor must initiate an adversary proceeding, with all of its procedural trappings, to invalidate a lien.

But these procedures are not proxies for the constitutional due process required to invalidate a lien. From a constitutional perspective, it makes no difference whether a debtor's plan seeks to extinguish a creditor's lien rights or simply reduce the value of the creditor's secured claim. Just because Congress has decided to require more process than the Fifth Amendment requires to deprive a creditor of a lien does not mean that the Constitution requires that enhanced process. Instead, as I stated above, all that the Constitution requires to deprive a person of property is notice

45

and an opportunity for a hearing.  And in this case, those requirements clearly were met and the majority fairly cannot say that they were not met.

In reaching my result I have taken particular note of the majority's reference, "[b]y way of analogy," to a situation in which a plaintiff seeks to commence a civil action with a motion filed with the court and mailed to a defendant. The majority indicates that we would not permit a default judgment to be entered on the basis of that procedure. I completely agree not because due process of law precluded entry of the judgment but rather because its entry would violate procedural rules.

In any event, the majority's hypothetical situation is not in any way analogous to that here. Mansaray-Ruffin seeks merely to uphold a confirmed plan and there is not the slightest suggestion in the record that the Code's procedural notice requirements for the confirmation of her plan were not satisfied. Nothing could be clearer than the Code's provision that the "confirmed plan bind[s] the debtor and each creditor." Section 1327(a). A proper analogy to the majority's hypothetical situation would be if Mansaray-Ruffin had been seeking to enforce an order from a procedurally defective adversary proceeding but she surely is doing no such thing as she never brought an adversary proceeding to avoid the lien. I reiterate she is seeking to enforce an order of confirmation. My point is not complex and is that we are not concerned with the due process aspect of the nonexistent adversary proceeding; rather we are concerned with the proceedings leading to confirmation of the plan.

47

Our case law compels a conclusion that due process was met in this case. In In re Fesq, the debtor filed a Chapter 13 plan that provided for a single lump sum payment of $7,050 in full satisfaction of a $69,166.59 judgment that was a lien on the debtor's house. 153 F.3d 113, 114 (3d Cir. 1998). The creditor did not file an objection to the plan and the bankruptcy court confirmed it. Id. The debtor then filed a motion to vacate the creditor's lien, and the creditor filed a cross-motion to vacate the confirmation order. Id. The bankruptcy court granted the debtor's motion and denied the creditor's motion. Id. at 115. The creditor appealed from the order denying its motion to vacate and the district court affirmed. Id. On appeal, in affirming we based our decision on the language of section 1330(a), which states that "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation . . . , and after notice and a hearing, the court may revoke such order if such order was procured by fraud." We noted Szostek's recognition that finality is an important goal of bankruptcy law and stated that "[r]evoking a confirmation order is a measure that upsets the legitimate expectations of both debtors and creditors. Interpreting Section 1330(a) as a limiting provision permits such disruption in only a very narrow category of egregious cases." Fesq, 153 F.3d at 120 (footnote omitted). Accordingly, we held that "fraud is the only ground for relief available for revocation of a Chapter 13 confirmation order." Id. Because the creditor in Fesq did not assert that the confirmation order was procured by fraud, we affirmed the judgment that granted the debtor's motion

48

to vacate the lien and denied the creditor's motion to revoke the confirmation order.  Id.

The majority contends that this case is distinguishable from Fesq because "Fesq did not involve a determination as to the validity of the creditor's lien or any other matter for which Rule 7001 requires an adversary proceeding" and thus "Fesq does not implicate the due process concerns that animate our decision in this case . . . ."  But the majority's conclusion cannot be correct: in Fesq we affirmed a ruling which both denied the creditor's motion to revoke the confirmation order and granted the debtor's motion to invalidate the creditor's lien.  Fesq, 153 F.3d at 114-15.  Thus, the result in that case is identical to the one that we should reach in this case.  The same due process concerns were present in Fesq as here and yet we found there that the debtor's plan bound the creditor.

Moreover, even if the majority is correct that Fesq did not involve the invalidation of a lien but instead involved only the modification of the amount of a secured claim, this distinction is immaterial in a due process inquiry.  In either situation, a debtor's plan adversely affects a creditor's property interest, the distinction being only of degree.  I ask what, under the majority's proposed distinction, would be the proper result if Mansaray-Ruffin had stated in her plan that she valued EMC's secured claim at $1?  Apparently the majority would find that Mansaray-Ruffin's confirmed plan bound EMC and that the lien would be satisfied upon payment of the $1.  After all, in such a situation,

49

Mansaray-Ruffin would not be providing in her plan that the lien would be avoided upon confirmation. And yet, the ultimate outcome in both the hypothetical scenario and this case would be the same: in both situations, EMC effectively would lose its lien in exchange for a fraction of its claim amount. I cannot understand how the majority can acknowledge that due process is satisfied in the hypothetical situation but not this case, when the procedures and outcome in both situations are identical.[12]

The majority also contends that Fesq is distinguishable because "quite simply, [the creditor] is not seeking the revocation of the Bankruptcy Court's confirmation order. Rather, it is asking us to declare that the confirmed plan did not invalidate the lien that it now holds." I disagree with the majority's assessment of this case. Although styled as an adversary proceeding to determine the status of the lien, EMC's case most certainly seeks to revoke the Bankruptcy Court's confirmation order to the extent

---

[12]The majority does not dispute my understanding of its opinion and apparently would have permitted Mansaray-Ruffin to substantially dilute the lien by fixing its amount at one dollar in her plan. One need not be a prophet to foresee that hereafter in this Circuit debtors in bankruptcy proceedings seeking to invalidate liens in some cases effectively will eliminate them without filing adversary proceedings simply by reducing their value in their plans to a nominal amount in the hope that somnolent creditors such as EMC will not object to the reduction.

50

that the order confirmed that Mansaray-Ruffin's plan avoided the lien. The majority's action, stepping in after the confirmation and finding that the lien survived the Bankruptcy Court's order, clearly annuls the order with respect to the lien. Thus, this case is not distinguishable from Fesq on that basis.

Furthermore, the majority's view will open the door to many post-confirmation challenges that attempt to undermine the provisions of confirmed plans without explicitly seeking "revocation" of those plans, a result that is not desirable because it will work against the important interest in finality that we recognized in Szostek. I ask what time constraints under the majority's ruling will limit a creditor from bringing such a post-confirmation challenge? EMC waited almost nine months after confirmation before it got around to bringing the adversary complaint in this case. How long could EMC have delayed before the majority would have concluded that it was too late for it to bring this adversary proceeding? The majority provides no guidance on this aspect of its decision.[13]

---

[13]The majority indicates that notwithstanding my concern regarding its "failure to provide guidance as to whether EMC delayed too long – nine months – after confirmation before filing its adversary proceeding," Mansaray-Ruffin, though complaining of the delay, "has not briefed this issue or pointed to authority to support the proposition that nine months was too long and/or should have barred EMC's claim." I disagree with the majority because clearly Mansaray-Ruffin's briefs recite:

51

EMC took no action of any kind in the case until the filing of a complaint in the Bankruptcy Court (Adversary Case No. 03-1297) on December 19, 2003. The Complaint did not seek to revoke the order confirming the Plan . . . . Indeed, it could not do so because (1) it was presently well past the 180-day time-period for seeking to revoke confirmation of a plan, even though EMC was informed of the presence and content of the confirmation order well within that time-period; and (2) [EMC] did not and could not allege the requisite fraud in procuring this order.

Appellant's Br. at 7-8 (citations omitted).

. . . .

From the time that she sent the letter of February 27, 2002, to EMC indicating that she rescinded the loan at issue until December 19, 2003, when the Proceeding at issue was filed, EMC failed to respond to any of the Debtor's statements that she considered the loan to be rescinded and the mortgage loan securing it invalid. . . . The Proceeding at issue, [was] filed almost nine months after confirmation and after the contents of the Plan had been reiterated twice in letters to EMC over six months before . . . .

Id. at 13-14.

. . . .

52

The majority relies on In re McKay, 732 F.2d 44, for the proposition that Mansaray-Ruffin's plan does not bind EMC because she did not initiate a separate adversary proceeding to challenge EMC's lien. In this regard in In re McKay we reversed

---

> The Appellee . . . cannot dispute that . . . it did not object to the confirmed plan, which was sent to it and set forth very precisely the exact treatment of the underlying claim in the plan; and that it received correspondence thereafter again describing its plan treatment which it did not in any way contest until it filed the proceeding at issue almost nine months after confirmation.

Appellant's Rep. Br. at 1.

Clearly Mansaray-Ruffin has briefed the delay argument and supported it with authority as her 180-day reference was to 11 U.S.C. § 1330 dealing with the period of revocation of a confirmation order for fraud. Obviously, the nine-month delay was very important for, as I point out above, EMC in effect was seeking to revoke the confirmation order to the extent that the order confirmed that Mansaray-Ruffin's plan avoided the lien. Thus, at the time that EMC brought these adversary proceedings its complaint could not have been amended to be a de jure action to revoke confirmation of the amended plan and EMC was attempting to do indirectly what it could no longer do directly.

53

a bankruptcy court's orders confirming the debtors' plans that included provisions avoiding liens against them because the debtors had not initiated adversary proceedings to avoid the liens. Id. at 48.

But McKay is distinguishable from this case and is no support at all for the majority's result and in no way is inconsistent with this dissent. In McKay, the creditor objected to the treatment of its liens and timely appealed the orders confirming the debtors' plans, precisely what EMC did not do. Therefore, the preclusive effect afforded confirmed plans under 11 U.S.C. § 1327 did not apply and the interest in finality that we articulated in Szostek was absent. In this case, by contrast, EMC did not object or appeal from the confirmation order. Thus, section 1327 applies to bind EMC and the need for finality – i.e., the need to protect the integrity of a confirmed plan against post-confirmation challenges – outweighs any reason to permit EMC to raise a post-confirmation collateral attack on Mansaray-Ruffin's plan.

In sum, I conclude that because due process requirements were met, Mansaray-Ruffin's confirmed plan binds EMC even though the plan included a provision adopted in violation of the Bankruptcy Rules. My approach to the due process issue in this case gives proper effect to section 1327, promotes the important goal of finality of bankruptcy confirmation orders, and encourages creditors to be active participants in the bankruptcy process. Moreover, it is faithful to the reasoning in In re Szostek

54

that we set forth almost 19 years ago that "although prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and trustee's obligations to verify a plan's compliance with the Code." 886 F.2d at 1406. For the foregoing reasons, I would reverse the District Court's order affirming the Bankruptcy Court's decision finding that EMC's lien survived the bankruptcy process.[14]

_____

[14]I make one more point with respect to this particular adversary proceeding and Mansaray-Ruffin's bankruptcy proceedings in general. As of now EMC's lien remains valid but because it did not object to the provision of her amended plan providing for the satisfaction of its lien until it brought these proceedings Mansaray-Ruffin previously had no reason to seek to rescind or otherwise avoid the lien in whole or in part as she had indicated that she contemplated doing in her original plan. It is beyond the scope of this case before us to decide whether she might now be able to bring the adversary proceeding she originally anticipated bringing but if fairness means anything she should have the opportunity to do so as EMC by its conduct in not objecting to the amended plan led her to believe that it acquiesced in the elimination of its lien. Indeed, even though I think that it is likely that EMC merely was negligent in not challenging the amended plan it is conceivable that to avoid the challenge that Mansaray-Ruffin originally contemplated bringing to avoid its lien, when EMC saw in the

Appendix

AMENDED CHAPTER 13 PLAN OF THE DEBTOR

1.  If the Debtor's estate were liquidated under Chapter 7 of the Bankruptcy Code, unsecured creditors would not receive any payments.  Those creditors will not receive less under the terms of this plan.

2.  The Debtor shall submit to the supervision and control of the Trustee payments in the amount of $10 monthly for the first 10 months of the plan, through July, 2003, and thereafter $50 monthly for the final 26 months of the plan.

---

amended plan that Mansaray-Ruffin would bring her adversary proceeding only if EMC amended the $1000 claim she would file on its behalf and did not assert a "larger or a secured claim" it brilliantly did not object to the treatment of its lien in the amended plan and instead bided its time in contemplation of bringing these proceedings.  I point out in this regard this scenario is not farfetched as according to the amended plan Mansaray-Ruffin did prosecute an adversary proceeding against another creditor in which she successfully avoided the creditor's claim.  Thus, EMC could not laugh off Mansaray-Ruffin's threat to bring an adversary proceeding to avoid its lien on the basis of the Truth in Lending Act, 15 U.S.C. §§ 1601 to 1667F, preferring instead to litigate the Truth in Lending Act issue, if necessary, in a state court foreclosure action.

3.  The Debtor has prosecuted an adversary proceeding which avoided the totally undersecured claim of AFBA-IB Bankcard Center.

4.  The Debtor planned to file a further adversary proceeding to avoid in whole or in part the secured claim allegedly arising from the first mortgage held against her residential realty by EMC Mortgage Corp. ("EMC"). However, EMC has not filed a proof of claim in this bankruptcy case. The Debtor will therefore file an unsecured proof of claim in the amount of $1000 on behalf of EMC, and will resort to an adversary proceeding against EMC only in the event that EMC successfully amends that claim and asserts a larger or a secured claim. The Debtor has been paying the regular mortgage payments to EMC outside of the plan in the event that her challenge of the claim of EMC would not be entirely successful. However, upon confirmation of this plan, in which the claim of EMC will be fixed as an unsecured claim in the amount of $1000 unless it is able to object to this claim, the Debtor will cease making payments to EMC, and EMC will be obliged to satisfy its mortgage against the Debtor's home upon the discharge of its debt as filed or allowed.

5.  The Debtor will avoid any judicial lien held against her residential realty by Sherran Gray.

6. The Debtor shall make arrangements to pay the various claims of the City of Philadelphia ("the City") directly to the City outside the plan.

7. The claims of the Debtor's creditors are classified in this Plan as follows:

A. Class One: Administrative claims. These claims include any unpaid attorney's fees and the Trustee's fees.

B. Class Two: The claim of EMC. This claim shall be dealt with as described in paragraph 4 of the plan and treated as an unsecured claim.

C. Class Three: The claim of AFBA. As noted in paragraph 3, this claim will be treated as an unsecured claim, because it is entirely undersecured and any security interest of this claimant has been avoided.

D. Class Four: The secured claim of Sherran Gray. As noted in paragraph 5, this claim will not be paid, because it either has been or can be avoided.

58

E. Class Five: The secured claims of the City & School District of Philadelphia ("the City") for real estate taxes, water and sewer, and a statutory municipal lien. The Debtor shall make an agreement with the City outside of the plan to liquidate these claims.

(F). Class Six: All other unsecured claims against the Debtor, in addition to the Class Two and Class Three claims, which are timely filed or ultimately allowed.

7.[15] The payments received by the Trustee from the Debtor shall be distributed first to allowed Class One claimants until they are paid in full; secondly, to any arrearages allowed to the Class Two claimant, and thirdly to Class Six claimants pro rata.

8. Title of the property of the estate shall revest in the Debtor upon confirmation of the Plan, and the Debtor shall have the sole right to the use and possession of same.

9. Upon application, the Debtor may alter the amount and timing of payments under this plan.

---

[15]In her plan Mansaray-Ruffin erroneously numbered two consecutive paragraphs "7."

10. The automatic stay shall remain in full force and effect until this case is closed.

11. Upon completion of this or any other duty confirmed plan, as amended, all claims of all creditors listed except the Class Five claims, including the Class Two, Three, and Four claims, shall be discharged, and any liens which those claimants have or had shall be void and shall be so marked on any court records.

_____